Daniel W. WIDENER, Appellant
(Defendant Below),

v.

STATE of Indiana, Appellee
(Plaintiff Below).

No. 15S00–9404–CR–365.

Supreme Court of Indiana.

Dec. 28, 1995.

John Pinnow, Special Assistant, to the State Public Defender, Greenwood, for appellant.

Pamela Carter, Attorney General, Jodi Kathryn Rowe, Deputy Attorney General, Indianapolis, for appellee.

**ON DIRECT APPEAL**

SULLIVAN, Justice.

On October 12, 1993, Daniel Widener (defendant) pled guilty to Felony Murder[1] and Conspiracy to Commit Robbery, a Class B Felony,[2] in accordance with a written plea agreement under which the trial court would determine his sentence. The sentencing hearing was held in December, 1993, and in January, 1994, the trial court sentenced defendant to consecutive terms of sixty years for Felony Murder and ten years for Conspiracy to Commit Robbery.

*Facts*

In October of 1992, three young men from Lawrenceburg, Indiana, Daniel Widener (age seventeen) and his friends, Christopher Lozier and Shawn Davis (both eighteen), planned a robbery to obtain some extra cash. Lozier suggested that they rob the local Citgo Gas Barn, where defendant and his mother worked. Davis, who had recently been fired from the local Ponderosa restaurant, suggested that they should rob a night manager of the Ponderosa.

On October 22, the three men discussed the robbery and agreed to use Davis's twenty-two caliber revolver to scare the Ponderosa night manager. Lozier suggested that they wear masks and gloves. Defendant bought a ski mask at the Army Surplus Store, and Lozier borrowed defendant's father's Halloween mask.

---

1. Ind.Code § 35–42–1–1(2) (1993).

2. Ind.Code § 35–41–5–2 (1993).

The threesome got together twice over the next few days to finalize their plans. Davis gave his cohorts information regarding the three different Ponderosa night managers. They established a route to the Star Bank and agreed that Davis would stay home during the robbery to establish an alibi.

On October 25, 1992, the three men got together early in the evening and played pool. Later, the threesome dined at the Ponderosa. After leaving the restaurant, they went to a gas station, where Davis handed Lozier a twenty-two caliber revolver that had been underneath the seat of the truck. They returned to the Ponderosa and Davis showed his cohorts the cars of Vanessa Wells, the victim, and that of another night manager.

Around 9:00 p.m., Davis drove defendant and Lozier to a Wal-mart parking lot. Defendant and Lozier walked from the parking lot along U.S. 50 to a parking lot adjacent to the Star Bank and crouched down between two parked cars. Lozier placed a concrete block in the driveway of the bank so that anyone making a night deposit would have to exit his or her vehicle. As the two men crouched in wait, Lozier showed defendant the revolver and placed it between them on the ground.

Around 1:30 a.m., Vanessa Wells arrived at the bank to make a deposit. Wearing masks and gloves, the two men ambushed Ms. Wells. Ms. Wells spotted her attackers, ran back to her car, locked the doors, and started screaming. Defendant approached the front passenger window of Wells's car and ordered her to get out. Still screaming, Wells attempted to start the car. Lozier ordered defendant to do something to stop Wells. Defendant stepped back and fired a shot that cracked the front passenger window. Horrified, Wells quit trying to start the car but continued screaming. The autopsy revealed that the first shot caused a graze wound to the victim's right cheek. Defendant placed his hand through the cracked window and fired a second shot that penetrated the victim's raised right hand and lodged in her neck. Now silent, Ms. Wells fell forward onto the car horn. Defendant dropped the gun.

At the sentencing hearing, defendant's and Lozier's stories as to what happened next differed. Each man accused the other of being the one who removed Wells from the front seat, placed her on the floorboard of the back seat, and later fired two more shots into her head. However, the two men did agree as to the following course of events. After the victim's body had been placed on the back seat floorboard, the assailants entered Wells's car, and Lozier drove it to the Lawrenceburg landfill. They counted the robbery proceeds on the way and were dismayed to discover that the total night deposit was approximately $275.00.

Lozier drove the car into some trees; the men exited the car and threw their coats, gloves, Widener's mask and the money bag into some pools of water at the landfill. Each man accused the other of taking bullets and spent shells out of the gun and throwing them off the levee. During the walk back to town, Lozier threw the gun into the Ohio River. The two men returned to defendant's home and fell asleep after Lozier called Davis to apprise him of the evening's events.

The next day defendant and Lozier spent part of the robbery proceeds at the mall watching a movie and eating out with their younger brothers. They also played basketball. The two men agreed not to give Davis any of the money. Each man accused the other of retaining that part of the proceeds that they did not spend at the mall. After their trip to the mall, the defendant and Lozier continued their daily life routines until they were questioned by the police in March of 1993.

Ms. Wells died as result of the gunshot wounds that she sustained. Ms. Wells's husband reported her missing the day after she was murdered. Three days later, two hunters in the landfill area discovered the victim's body in her car.

*Discussion*

Defendant asserts that the aggregate seventy year sentence imposed by the trial court is manifestly unreasonable, both because the trial court relied on invalid aggravating circumstances and did not indicate that it con-

sidered all proffered mitigating circumstances.

The trial court sentenced defendant as follows:

Mr. Widener, the Court sentences you to the Department of Corrections for classification and confinement for the crime of murder, a felony, for a period of forty years. The Court enhances that sentence by an additional twenty years and in support of that enhancement finds that the following aggravating circumstances exist.

A human being met her death as a result of being shot by you and another in the commission of a robbery, and the Court finds that the manner in which the crime was committed was heinous, cold-blooded and callus [sic] in that the defendant shot the victim once, the victim stopped resisting, and the defendant smashed the gun and his hand through her car window and shot her again, and the calculating and bizarre disposition of the body of the victim and the immediate thereafter placement and careful disposition of the gun and bullets, the mask and the bank bag and other evidence in the case.

Number two, it finds that the events following the death of the victim and the recreational entertainment which you enjoyed with Mr. Lozier the following day with the proceeds of this death show a callus [sic] and stoic lack of remorse which offends and shocks the human conscious [sic].

Thirdly, the imposition of any reduced or suspended sentence would depreciate the seriousness of the crime.

On the charge of conspiracy to commit robbery, a class B felony, the Court sentences you to the Department of Corrections for classification and confinement for a period of ten years and orders that that sentence be served consecutively to the sentence for felony murder, and in support thereof, finds the same aggravating circumstances that it did with regard to the enhancement of the sentence for murder, a felony.

Let the record also show the Court has taken into account the ages of all three of these defendants as a mitigating circumstance, but finds that the aggravating circumstances outweigh the mitigating circumstances.

I

■ Defendant contends that the trial court's first finding, that "[a] human being met her death as a result of being shot by you and another in the commission of a robbery," does no more than state the factual elements comprising the felony murder charge and that facts making up the material elements of a crime may not also constitute an aggravating circumstance to support an enhanced sentence. While it is true that a material element of a crime may not also serve as an aggravating circumstance for sentence enhancement, particularized circumstances relating to such factual elements may. *Townsend v. State* (1986), Ind., 498 N.E.2d 1198, 1202. Here, the trial court stated that it was the manner in which the crimes were committed—*i.e.*, "that the defendant shot the victim once, the victim stopped resisting, and the defendant smashed the gun and his hand through her car window and shot her again" and the calculated disposition of the body, gun, and other characteristics of this particular murder—that support a sentence enhancement. We think that this was a sufficiently particularized account of the reasons why the defendant's commission of felony murder supported an enhanced sentence and that the trial court's statements in this regard are clearly more than a bare recitation of the elements of the felony murder charge. Therefore, we conclude that the trial court could properly consider the particular manner in which the crimes were committed as a valid aggravating circumstance.

■ Defendant asserts that the trial court further erred in finding lack of remorse as an aggravating circumstance because the record shows that he was in fact remorseful about his actions. The record reveals that, when questioned by the police, codefendant Shawn Davis stated that defendant appeared quite distraught when defendant mentioned that he had not slept well since the murder and that every time he closed his eyes he saw the victim. A police detective who testified at

defendant's sentencing hearing stated that the first time that he noticed any show of remorse from defendant was during his sentencing hearing. It is also undisputed that the day after the murder defendant and Lozier took their younger brothers to the mall to watch a movie and eat out. They also played basketball that day.

It is within the discretion of the trial court to determine whether a presumptive sentence will be increased because of aggravating circumstances. *Fugate v. State* (1993), Ind., 608 N.E.2d 1370, 1374. A defendant's lack of remorse can be a valid aggravating circumstance. *Owens v. State* (1989), Ind., 544 N.E.2d 1375, 1378. We can not say that the trial court abused its discretion by concluding that the undisputed facts that defendant shot and robbed an unsuspecting woman and went out the next day and enjoyed recreational entertainment showed a lack of remorse, notwithstanding the fact that defendant's best friend alleged that defendant had had trouble sleeping since the night defendant killed the victim. The fact that the detective who investigated this case testified that defendant seemed to be completely unremorseful until shortly prior to sentencing supports this conclusion.

Citing *Evans v. State* (1986), Ind., 497 N.E.2d 919, 923, defendant contends that the trial court's determination that a reduced sentence would depreciate the seriousness of the crime was erroneous because this aggravating factor may be used only when the trial court is considering the imposition of a sentence of shorter duration than the presumptive sentence. The State concedes this point in its brief to this court but asserts that the other aggravating circumstances considered by the trial court warrant the imposition of an enhanced sentence. We agree. The improper use of the "depreciate seriousness" aggravating circumstance will not necessarily invalidate a sentence enhancement where other valid aggravating circumstances are found. *Ector v. State* (1994), Ind., 639 N.E.2d 1014, 1016.

## II

Defendant contends that the trial court erred by failing to indicate in the record that it considered all proffered mitigating circumstances.

When the trial court imposes the presumptive sentence for an offense this Court presumes that the court considered the risk that the person will commit another crime, the nature and circumstances of the crime committed, and the prior criminal record, character, and condition of the person. The court must include within the record a statement of its reasons for selecting the sentence it imposes only when the court finds aggravating circumstances or mitigating circumstances.

The trial court's statement of reasons must include the following three elements: (1) it must identify all of the *significant* mitigating and aggravating circumstances, (2) it must state the specific reason why each circumstance is considered to be mitigating or aggravating, and (3) it must articulate that the court evaluated and balanced the mitigating circumstances against the aggravating circumstances to determine if the mitigating circumstances offset the aggravating circumstances.

*Hammons v. State* (1986), Ind., 493 N.E.2d 1250, 1254 (citations omitted).

A trial court *must* include a description of significant mitigating circumstances within the record if it reduces the presumptive sentence or it uses mitigating circumstances to offset the aggravating circumstances which serve to enhance the sentence. *Id.* Otherwise, a trial court is not required to include within the record a description of all proffered mitigating circumstances because a finding of mitigating circumstances lies within a trial court's discretion, and the court is not obligated to find that mitigating circumstances exist at all. Ind.Code § 35-38-1-7(c) (1993); *Aguirre v. State* (1990), Ind., 552 N.E.2d 473, 476. In this context, a sentencing judge is not required to explain why he or she has chosen not to make a finding of mitigation. *Hammons*, 493 N.E.2d at 1254. This is especially the case where the record reveals that proffered mitigators are disputed. *Id.* Further, the trial court is not required to give the same credit or

weight to the proffered mitigating circumstances that the defendant does. *Id.* at 1255. However, a sentencing judge may not ignore facts in the record that would mitigate an offense, and a failure to find mitigating circumstances that are clearly supported by the record may imply that the trial court failed to properly consider them. *Scheckel v. State* (1993), Ind., 620 N.E.2d 681, 685 *appeal after remand,* 655 N.E.2d 506 (1995).

 Defendant argues that the trial court's failure to include within the record an express statement that it considered all proffered mitigating circumstances necessitates the assumption that the trial court overlooked mitigators that are clearly supported by the record. We disagree. Although trial courts should consider all proffered mitigating circumstances in making sentencing determinations to prevent overlooking any mitigators that may be clearly supported by the record, trial courts will not necessarily conclude that *significant* mitigating circumstances—the kind that must be described by the sentencing judge—exist. The trial court was not required to include within the record a statement that it considered all proffered mitigating circumstances, only those that it considered significant.[3]

### III

 As noted above, a trial court must include within the record a description of *significant* mitigating circumstances. The trial court's statement in this case did take into account the youthful ages of all three defendants, but failed to discuss additional mitigating circumstances that we find significant. First, the seventeen year old defendant had no significant history of prior criminal involvement. While he had had an informal adjustment for consuming alcohol when he was sixteen, he had not been charged or convicted of any criminal acts. Second, defendant pled guilty to both the murder and the conspiracy to commit robbery charges, saving the court time and judicial resources. Third, even though the ev-

idence of remorse was rejected by the trial court, the fact that defendant pled guilty does show that he was willing to accept responsibility for his actions. *Scheckel,* 655 N.E.2d at 511. Fourth, although defendant actively engaged in the murder and robbery, even the State does not dispute that the plan was initiated by Lozier and formulated primarily by Davis because of Davis's knowledge of the night managerial procedures at the local Ponderosa. These additional significant mitigating factors lead us to the conclusion that the sentence imposed containing a maximum twenty year enhancement of the presumptive forty year murder sentence and consecutive sentences for the robbery and murder convictions was manifestly unreasonable. Rather, we hold that a ten year enhancement of the presumptive forty year murder sentence and the imposition of concurrent sentences is the appropriate sentence for this offender and his crime.

### Conclusion

We therefore vacate defendant's sentence and remand this cause to the trial court with instructions to impose a fifty year sentence on the murder charge and a ten year sentence on the conspiracy to commit robbery charge, with the sentences to run concurrently. Ind. Const., art. VII, § 4; App.R. 17(B).

SHEPARD, C.J., and DeBRULER and SELBY, JJ., concur.

DICKSON, J., dissents and would affirm the sentence ordered by the trial court.

---

**3.** However, a thoroughly written sentencing statement that discusses all proffered mitigating circumstances greatly facilitates appellate review. *Henderson v. State* (1986), Ind., 489 N.E.2d 68, 72.