David W. SINGER, Appellant–Defendant,

v.

STATE of Indiana, Appellee–Plaintiff.

No. 49A02–9605–CR–265.

Court of Appeals of Indiana.

Nov. 27, 1996.

**12**

John Pinnow, Indianapolis, for Appellant–Defendant.

Pamela Carter, Attorney General of Indiana and Cynthia L. Ploughe, Deputy Attorney General, Indianapolis, for Appellee–Plaintiff.

## OPINION

KIRSCH, Judge.

David Singer pled guilty to five counts of child molesting,[1] as Class B felonies, three counts of child molesting,[2] as Class C felonies, one count of child molesting,[3] as a Class D felony, and two counts of vicarious sexual gratification,[4] as Class C felonies. On appeal, we restate the issues as:

I. Whether the 100–year sentence for multiple counts of child molesting and vicarious sexual gratification is manifestly unreasonable in light of the nature of the offenses and the character of the offender; and

II. Whether the trial court failed to consider certain mitigating factors.

We affirm.

---

**1.** *See* IC 35–42–4–3(a).

**2.** *See* IC 35–42–4–3(b).

**3.** *See* IC 35–42–4–3(d).

**4.** *See* IC 35–42–4–5(a).

## FACTS AND PROCEDURAL HISTORY

Singer admitted abusing his twin step-daughters [5] over a period of six years, beginning when they were seven years old. The abuse occurred at least twice a week with both girls and took many forms: (1) Singer would touch their genitals, and had the girls manipulate his genitals until he ejaculated; (2) he forced them to submit to cunnilingus; (3) he forced them to commit fellatio, often ejaculating in their mouths; (4) he had the girls perform cunnilingus on each other while he masturbated in their presence; and, (5) he had anal intercourse and unsuccessfully attempted vaginal intercourse with both the step-daughters.

During the time Singer was sexually abusing the girls, he said that he would kill himself if they left him, threatened them with violence if they did not keep silent about the molestations, and beat them with extension cords, hangers, and belts. Singer threatened one step-daughter with a knife, threw the other step-daughter through a glass window, and then kicked her in the stomach.

Singer pled guilty to all eleven counts charged by the State. Counts I, II, IX, X, and XI, were for child molesting as a Class B felony, which carries a ten-year presumptive sentence with a maximum ten-year enhancement.[6] The trial court enhanced all five of those counts by ten years and ordered that they be served consecutively, resulting in a 100–year sentence. Counts III, IV, and VII, were child molesting and Counts V and VI were vicarious sexual gratification; all were charged as class C felonies with four-year presumptive sentences.[7] The trial court imposed the maximum four-year enhancement and sentenced Singer to eight years on each of those counts, which were to run concurrently with the previous counts. Count VIII was for child molesting as a Class D felony, which carries a presumptive sentence of one and one-half years, with an equivalent maximum enhancement.[8] The trial court sentenced Singer to three years on Count VIII, to run concurrently with the previous sentences. Singer now appeals.

## DISCUSSION AND DECISION

### I. Manifestly Unreasonable Sentence

Singer asserts that his 100–year sentence is manifestly unreasonable. We disagree.

■ Sentencing decisions rest within the sound discretion of the trial court and we will reverse only upon a manifest abuse of that discretion. *Miller v. State,* 634 N.E.2d 57, 63 (Ind.Ct.App.1994). If the sentence imposed is authorized by statute, we will not revise or set aside the sentence unless it is manifestly unreasonable in light of the nature of the offense and the character of the offender. Ind.Appellate Rule 17(B)(1). A sentence is manifestly unreasonable only if no reasonable person could find such sentence appropriate to the particular offense and offender. Ind.Appellate Rule 17(B)(2). When making this determination, we note that reasonable people will differ as to the appropriate sentence in any given case. *Miller v. State,* 659 N.E.2d 622, 624 (Ind.Ct.App.1995). Therefore, giving due regard to the nature of this inquiry, we must refrain from merely substituting our opinions for those of the trial court. *Id.*

■ The trial court's wide discretion extends to the determination of whether to increase presumptive penalties, impose consecutive sentences on multiple convictions, or both. *Ridenour v. State,* 639 N.E.2d 288, 296 (Ind.Ct.App.1994). Sentencing courts are not limited to the aggravating factors listed in IC 35–38–1–7.1(b). *Collins v. State,* 643 N.E.2d 375, 382 (Ind.Ct.App.1994), *trans. denied.* When a sentence is enhanced or consecutive sentences are imposed, the trial court must set forth a statement of its reasons for selecting a particular punishment. *Fuller v. State,* 639 N.E.2d 344, 349 (Ind.Ct.App.1994). That statement should set forth:

---

5. The pre-sentence report reveals that Singer's ex-wife was the mother of the twins. However, Singer claimed that she was unfaithful during their marriage. Therefore, he is not sure whether he is the natural father of the twins. We will assume that they are his step-daughters.

6. *See* IC 35–50–2–5.

7. *See* IC 35–50–2–6.

8. *See* IC 35–50–2–7.

" '[A]ll significant aggravating and mitigating circumstances, include a specific reason why each circumstance is mitigating or aggravating, and weigh mitigating circumstances against the aggravating factors.' " *Id.* (quoting *Sims v. State,* 585 N.E.2d 271, 272 (Ind.1992)). The trial court is not obligated to find the existence of mitigating circumstances, nor is it required to give the same credit as the defendant does to the defendant's proffered mitigating circumstances. *Widener v. State,* 659 N.E.2d 529, 533 (Ind.1995). The trial court may not, however, ignore significant mitigating circumstances that are supported by the record. *Id.* at 534.

A sentencing statement serves two purposes: (1) it guards against the imposition of arbitrary or capricious sentences by ensuring that the sentencing judge will consider only proper factors; and (2) it facilitates appellate review of the sentence. *Hardebeck v. State,* 656 N.E.2d 486, 491 (Ind.Ct. App.1995), *trans. denied.* If the trial court states proper reasons for enhancing a sentence but merely does not do so with sufficient particularity, such an error does not mandate remand. *Meriweather v. State,* 659 N.E.2d 133, 145 (Ind.Ct.App.1995), *trans. denied.* As long as the record indicates that the trial court engaged in the evaluative processes and the sentence was not manifestly unreasonable, the purposes of the sentencing statement have been satisfied. *Id.* When reviewing a sentencing statement this court is not limited to the written sentencing order but may examine the record as a whole to determine that the trial court made a sufficient statement of its reasons for selecting the sentence imposed. *Hardebeck,* 656 N.E.2d at 492.

Here, the trial court's sentencing statement noted, in pertinent part:

"The Court has read the pre-sentence report, heard the evidence that was submitted, read the pre-sentence statement made by Mr. Singer and submitted to the Court. The Court does find ... by way of aggravating circumstances, that the victims were in a position of trust with the Defendant; that the incidents were repeated and over a long period of time, and that there were also acts of violence that were along with these.... The Court would also cite as mitigating circumstances [the] fact that the Defendant has shown remorse and that the Defendant, in fact, did plead guilty as opposed to making these victims go through a trial. However, the Court does find that the aggravating circumstances outweigh the mitigating circumstances."

*Record* at 234–37. The court listed several valid aggravating factors. First, the court noted that Singer violated a position of trust. Abusing a "position of trust" is, by itself, a valid aggravator which supports the maximum enhancement of a sentence for child molesting. *Middlebrook v. State,* 593 N.E.2d 212, 214 (Ind.Ct.App.1992). The Record reveals that Singer gained full custody of the twins when they were seven years old, following the completion of his dissolution action and his ex-wife's arrest for burglary. As the sole custodial parent, Singer was entrusted with the twins' upbringing, maintenance, and care. Instead, he used his position of trust to molest the twins and then induced their silence by intimidation and violence.

Second, the court noted that Singer repeatedly committed these various acts of molestations over a long period of time. Repeated molestations occurring over a period of time is a valid aggravator supporting maximum enhancement of a sentence for child molesting. *Kelly v. State,* 452 N.E.2d 907, 912 (Ind.1983). The Record reveals that the abuse began when the twins were seven years old and occurred twice-a-week with both girls for approximately six years, until they were twelve years old. The Record further reveals that Singer appreciated the pernicious nature of his actions, told the girls that he would stop, but that he continued abusing them. Singer's abuse of the twins stopped only when the police were informed.

Finally, the court noted that Singer committed repeated acts of violence on the twins. Uncharged misconduct is a valid sentence aggravator. *Lockard v. State,* 600 N.E.2d 985, 987–88 (Ind.Ct.App.1992), *trans. denied.* Here, the court properly considered the fact that Singer would often lose his temper and beat the twins with an assort-

ment of objects such as extension cords, hangers, and belts, leaving bruises and welts. On one occasion, he threatened one of the twins by pointing a knife at her stomach; on a separate occasion, he threw the other twin through a glass window and kicked her in the stomach. Although the State did not formally charge him with battery for these beatings, the trial court could consider them when enhancing Singer's sentences.[9]

Based on these aggravating factors, the trial court imposed the maximum ten-year enhancement on Singer's five counts for child molesting as a Class B felony and ordered that they be served consecutively. The trial court ordered the sentences for the remaining six counts to be served concurrently, thus resulting in an aggregate 100–year sentence. An examination into the nature of the offense and the character of the offender leads us to conclude that the sentence was not manifestly unreasonable.

First, we must carefully consider the nature of the offense. Crimes against children are contemptible. Therefore, Indiana supports a public policy that protects children and punishes child abusers. *See, e.g.,* IC 35–50–1–2(a)(9) (defining child molesting as a crime of violence with regard to sentencing); IC 35–42–4–3(a) (classifying child molesting with a child under twelve years of age as a class B felony, the same felony classification given to voluntary manslaughter,[10] aggravated battery,[11] rape,[12] and criminal deviate conduct[13]); IC 31–6–11–3 (imposing a duty on all individuals to report suspected child abuse); IC 31–6–11–8 (abrogating physician-patient privilege in cases of child abuse); *Baggett v. State,* 514 N.E.2d 1244, 1244–45 (Ind.1987) (holding IC 31–6–11–8 applicable in cases of child molesting).

Here, the molestations started when the twins were very young, seven years old, were perpetrated by their father, the lone custodial parent, and continued over a six-year period. Through counseling, the twins revealed that they felt worthless because of the molestations, guilty because they helped to turn in their father, and that they were afraid to sleep at night because Singer would often wake them during the night to molest them. In a letter to the court that was read during the sentencing hearing, one of the twins stated that she lived in constant fear of beatings and molestations, hated feeling like his toy, and hated it when Singer would make her sister scream in pain. The counselor noted that the other twin suffered from depression and had considered committing suicide. Singer's crimes were borne out of betrayal, accompanied by violence, and engendered constant fear in his young children. The nature of Singer's crimes supports a lengthy sentence.[14]

---

**9.** The pre-sentence report reveals further uncharged misconduct by Singer. Shortly before Singer's arrest, L.H. and her daughter M.H. moved into Singer's home to protect themselves from an abusive relationship with a different man. One night, the twins invited M.H. to sleep with them in Singer's bed. M.H. awoke that evening to find Singer fondling her. He admitted to her that he liked little girls, forced her to submit to cunnilingus, and then had her touch his genitals. M.H. informed her mother, who then contacted the police. Later, Singer called L.H. and left a threatening message on her answering machine that he would kill her and cut her up into parts for calling the police. This uncharged misconduct would also have been a proper aggravator. *See Lockard,* 600 N.E.2d at 987–88. However, the trial court's sentencing statement made no finding regarding such misconduct, and our decision does not rest upon the presence of such an aggravating factor.

**10.** *See* IC 35–42–1–3(a).

**11.** *See* IC 35–42–2–1.5.

**12.** *See* IC 35–42–4–1.

**13.** *See* IC 35–42–4–2.

**14.** Victims of child sexual abuse must cope with enduring physical and psychological injuries. They often experience *strong feelings of guilt and fear* associated with the perpetrator as well as their own powerlessness. *See* Comment, *Article 38.071 of Texas Code of Criminal Procedure: A Legislative Response to the Needs of Children in the Courtroom,* 18 ST. MARY'S L.J. 279, 289 (1986). The abuse also interferes with the normal psychological development of the child. *Id.* at 293 (citing Abel, Becker & Cunningham–Rathner, *Complications, Consent, and Cognitions in Sex Between Children and Adults,* 7 INT'L J.L. & PSYCHIATRY 89, 93–94 (1984) (explaining the consequences of child sexual abuse)). Significant factors that affect the degree of psychological trauma include: the age of the child when the abuse occurred; the child's relation to the abuser; and the length of time during which the abuse occurred. *See generally Child Sexual Abuse: Incest, Assault, and Sexual Exploitation,* 2

Second, we must consider the character of the offender. Singer was entrusted with the care and protection of his seven year old twins. Singer provided them quite the opposite: six years of sexual molestations along with various forms of physical and mental abuse. Instead of being a father, Singer admitted that he felt like a boyfriend or lover to one of the twins and that he intended to marry her. Singer told the girls he would not touch them if they did not want it, but then ignored their refusals. He also relied on fear and intimidation to prevent the twins from revealing the sexual abuse. Given the nature of the crime and the character of the offender, we hold that Singer's 100–year sentence, while severe, is not manifestly unreasonable.

In so holding, we give due regard to the widely varying sentences imposed on crimes involving sex and violence. *Compare Garrison v. State*, 589 N.E.2d 1156, 1160 (Ind. 1992) (affirming 140–year sentence for rape, four counts of confinement, burglary, three counts of robbery, and an habitual offender determination); *Dinger v. State*, 540 N.E.2d 39, 40 (Ind.1989) (affirming eighty-year sentence for two counts of criminal deviate conduct and two counts of child molesting); *Mills v. State*, 536 N.E.2d 290, 292 (Ind.1989) (affirming 120–year sentence for rape, criminal deviate conduct, robbery, and confinement); *Miller v. State*, 483 N.E.2d 46, 48–49 (Ind.1985) (affirming seventy-four-year sentence for ten counts of child molesting); *Ridenour v. State*, 639 N.E.2d 288, 298 (Ind.Ct. App.1994) (affirming ninety-two-year sentence for six counts of child molesting); *Barker v. State*, 622 N.E.2d 1336, 1339 (Ind. Ct.App.1994) (affirming 130–year sentence for rape, criminal deviate conduct, robbery, and burglary), *trans. denied*;[15] *Moore v. State*, 569 N.E.2d 695, 699 (Ind.Ct.App.1991) (affirming 180–year sentence for two counts of rape, two counts of criminal deviate con-

duct, confinement and attempted confinement), *trans. denied; Manning v. State*, 557 N.E.2d 1335, 1339 (Ind.Ct.App.1990) (affirming 140–year sentence for two counts of rape and two counts of confinement), *trans. denied; Edwards v. State*, 518 N.E.2d 1137, 1140 (Ind.Ct.App.1988) (affirming 110–year sentence for two counts of attempted rape, two counts of confinement, and one count of burglary), *trans. denied; with Fointno v. State*, 487 N.E.2d 140, 149 (Ind.1986) (declaring 104–year sentence for rape, two counts of confinement, robbery, and intimidation manifestly unreasonable and reducing it by twenty-four years); *Miller v. State*, 659 N.E.2d 622, 623 (Ind.Ct.App.1995) (affirming eight-year sentence with four years suspended for two counts of child molesting); *Kubiak v. State*, 508 N.E.2d 559, 566–67 (Ind.Ct.App. 1987) (declaring 100–year sentence for kidnapping, rape, criminal deviate conduct, and robbery manifestly unreasonable and reducing it by ten years). Rather than mandating a particular sentence, these examples reveal that sentencing in this area is factually sensitive and should be left to the sound discretion of the trial court.

In *Ridenour v. State*, 639 N.E.2d 288 (Ind. Ct.App.1994), this court held that a ninety-two-year sentence for five counts of child molesting as Class B felonies and one count of battery as a Class D felony, was not manifestly unreasonable. In *Ridenour*, the father molested his daughters, ages five and nine. Ridenour forced the older daughter to perform fellatio, submit to cunnilingus, and engage in anal and vaginal intercourse. *Id.* at 290. Ridenour also inserted his finger inside the younger daughter. *Id.* On all five of the child molesting convictions, the trial court sentenced Ridenour to the presumptive ten years with an eight-year enhancement. *Id.* at 295. For the battery conviction, the court ordered that the one and one-half year sentence be enhanced by six months. *Id.*

Child Abuse & Neglect 5 (1980); Greenberg, The Epidemiology of Childhood Sexual Abuse, Pediatric Annals, May 1979, at 24; Suzanne M. Sgroi, *Child Sexual Assault: Some Guidelines for Intervention and Assessment, in Sexual Assault of Children and Adolescents* 129, 134 (1978) (finding that the emotional impact on the victim increases in direct proportion to the child's relationship with the offender, and that an increased number

of sexual incidents over a long period of time have a more pronounced effect on the child).

**15.** In *Barker*, we found that the 130–year sentence was not manifestly unreasonable, but remanded for a more definite sentencing statement. 622 N.E.2d at 1340.

The trial court ordered that all of the sentences be served consecutively, resulting in a ninety-two-year sentence. *Id.* Some of the valid aggravating factors noted by the court included: abusing a position of trust, repeated violent conduct, prior uncharged misconduct, and evaluating the emotional harm done to the victims. *Id.* at 296. Using those aggravators, this court affirmed the sentence enhancement and the imposition of consecutive sentences. *Id.* at 298.

Singer's case presents a similar set of circumstances. A father abuses his position of trust, repeatedly molests his young daughters, physically beats them, and preys upon their fear and trust in order to keep them silent. In affirming this sentence, we take particular note of the fact that Singer pled guilty to eleven felonies. The maximum sentence authorized by statute for all eleven offenses totals 143 years. When examined individually, each of the sentences imposed by the trial court fell within the statutory range for the designated crimes. The trial court, in its discretion, relied on valid aggravating factors to enhance the sentences and ordered five of the eleven counts to be served consecutively. *See Dinger,* 540 N.E.2d at 40 (affirming maximum enhancement in addition to consecutive sentencing for two counts of criminal deviate conduct, two counts of child molesting, all Class B felonies, resulting in an eighty-year sentence). Given the nature of the crime and the character of the offender, we cannot say that Singer's 100–year sentence is manifestly unreasonable.

Singer also asserts that his sentence violated the Indiana Constitution because it did not have rehabilitation as its goal. We disagree.

Article I, § 18 of the Indiana Constitution provides, "The penal code shall be founded on the principles of reformation, and not of vindictive justice." Our supreme court has interpreted this constitutional provision as applying to penal statutes and insuring that they are promulgated on the dual theories of reformation and the protection of society. *Williams v. State,* 430 N.E.2d 759, 766 (Ind. 1982), *appeal dismissed sub nom. Williams v. Indiana,* 459 U.S. 808, 103 S.Ct. 33, 74 L.Ed.2d 47 (1982); *see also Johnston v.*

*State,* 578 N.E.2d 656, 659 (Ind.1991) ("[t]rial judges are empowered to impose consecutive sentences on multiple crimes and ... the legislature has not seen fit to put any limitation upon the aggregate number of years which may be imposed."); *Emory v. State,* 420 N.E.2d 883, 886 (Ind.1981) (holding that it was not a correct statement of law to assert that Art. I § 18 prohibited criminal verdicts being based on punishment). In addition, our supreme court has addressed the constitutional claim in the context of whether a sentence is manifestly unreasonable. *Holmes v. State,* 642 N.E.2d 970, 973 (Ind.1994); *see also Johnston,* 578 N.E.2d at 659 (rejecting appellant's Art. I, § 18 claim and holding his 230–year sentence was not manifestly unreasonable); *Fointno,* 487 N.E.2d at 149 (citing Art. I, § 18 and holding appellant's 104–year sentence as manifestly unreasonable). *But see Binkley v. State,* 654 N.E.2d 736, 739 (Ind.1995) (holding ninety-two-year sentence was not manifestly unreasonable but did not address Art. I, § 18 claim because counsel provided no argument on it), *reh'g denied* (1996).

Here, our analysis of whether the sentence was manifestly unreasonable applies to the constitutional challenge. Having held that Singer's 100–year sentence was not manifestly unreasonable in light of the nature of the offense and the character of the offender, we also hold that it did not violate Art. I § 18 of the Indiana Constitution.

### II. Mitigating Factors

Singer claims that the trial court erred by failing to give proper weight to significant mitigating circumstances and by failing to include other mitigating circumstances. We disagree.

At the sentencing hearing the court found the following mitigating circumstances, "[t]hat the Defendant has shown remorse and that the Defendant, in fact, did plead guilty as opposed to making these victims go through a trial." *Record* at 236. Remorse may properly be considered as a mitigating factor. *Kocher v. State,* 439 N.E.2d 1344, 1346 (Ind.1982). It is well settled, however, that a sentencing court is not required to find the existence of mitigating

circumstances nor to give mitigating circumstances the same weight as the defendant gives them. *Lamotte v. State*, 495 N.E.2d 729, 734 (Ind.1986). The sentencing court considered Singer's remorse but determined that it was outweighed by the aggravating factors. That was well within the court's discretion. *Id.*

The sentencing court also cited as mitigating the fact that Singer pled guilty to all eleven counts. Singer claims that his action entitles him to a reduced sentence and cites two recent supreme court cases, *Widener v. State*, 659 N.E.2d 529 (Ind.1995), and *Scheckel v. State*, 655 N.E.2d 506 (Ind.1995). In *Widener*, the defendant pled guilty to felony murder and conspiracy to commit robbery. *Id.* at 530. The trial court sentenced him to sixty years for felony murder and ten years for conspiracy and ordered that they be served consecutively, resulting in a seventy-year sentence. *Id.* Our supreme court reduced the sentence to fifty years, citing the defendant's youth, that he pled guilty, was willing to accept responsibility for his actions, and did not formulate the plan that resulted in the victim's death. *Id.* at 534. Similarly, in *Scheckel*, the defendant's sixty-year sentence for murder was reduced to a fifty-year sentence. 655 N.E.2d at 511. The court reasoned that the defendant pled guilty, and that by doing so, saved the court time and resources and spared the victim's family from enduring a full trial. *Id.* The court went on to state " 'a defendant who willingly enters a plea of guilty has extended a substantial benefit to the state and deserves to have a substantial benefit extended to him in return.' " *Id.* (quoting *Williams v. State*, 430 N.E.2d 759, 764, *appeal dismissed*, 459 U.S. 808, 103 S.Ct. 33, 74 L.Ed.2d 47 (1982)).

▮▮▮ We do not dispute the fact that defendants who plead guilty spare the victims and their families the ordeal of a full trial, and save time and valuable judicial resources. We also recognize that pleading guilty may be considered as a valid mitigating circumstance. We stress, however, that pleading guilty is but one factor to be considered by the trial court in sentencing and that the trial court has wide discretion in balancing aggravating and mitigating factors in

sentencing. *See Tumulty v. State*, 666 N.E.2d 394, 396 (Ind.1996) (affirming trial court's decision to give greater weight to aggravating factors when mitigators included the defendant's youth, affection for his daughter, good conduct in jail, and the fact that he pled guilty). If a reviewing court were to place too much emphasis on a guilty plea as a mitigator, then defendants who exercised their constitutional rights to jury trials would be precluded from benefiting from such a mitigator, and therefore, would indirectly be punished for exercising a constitutional right.

Here, the trial court took note of the aggravating and mitigating factors and concluded "that the aggravating circumstances outweigh the mitigating circumstances." *Record* at 236–37. The trial court carefully weighed the aggravating and mitigating circumstances necessary to impose enhanced penalties. *See Duvall v. State*, 540 N.E.2d 34, 36 (Ind.1989) (affirming trial court's sentencing statement when the court set forth aggravating and mitigating factors, considered the pre-sentence report, and found the aggravating factors outweighed the mitigating factors). It was not required to give any particular weight to the mitigating circumstances and properly exercised its discretion in giving less weight to Singer's guilty plea. *Miller v. State*, 634 N.E.2d 57, 64 (Ind.Ct. App.1994).

Singer finally asserts that the trial court failed to consider his unhappy childhood as a mitigating circumstance. The trial court is not required to find mitigating circumstances nor to explain why it rejected the proffered evidence of mitigation. *Fugate v. State*, 608 N.E.2d 1370, 1374 (Ind.1993). During the sentencing hearing, Singer's counsel stated that Singer had been sexually abused as a child and had come from a broken family. This information was also in the pre-sentence report. The court revealed its consideration of Singer's childhood when it noted during the sentencing hearing that it heard the evidence presented and had reviewed the pre-sentence report. *See Rhoton v. State*, 483 N.E.2d 51, 56 (Ind.1985) (affirming trial court's decision to give greater weight to aggravating factors after reviewing pre-sen-

 

tence report and hearing defendant's testimony concerning family background). Thus, the trial court did not abuse its discretion in finding that Singer's unhappy childhood was not a mitigating factor.

## CONCLUSION

Upon examining the Record in light of Singer's 100–year sentence, we conclude that the trial court properly exercised its discretion in finding aggravating and mitigating factors, evaluating and weighing them, and imposing an appropriate sentence. In light of the nature of Singer's crimes against his step-daughters and of his character, we hold a 100–year sentence was not manifestly unreasonable.

Affirmed.

SULLIVAN, J., concurs.

CHEZEM, J., concurs in result.