Natasha L. WILSON, Appellant–
Defendant,

v.

STATE of Indiana, Appellee.

No. 90A02–9604–CR–214.

Court of Appeals of Indiana.

May 13, 1997.

Stanley L. Campbell, Swanson & Campbell, Fort Wayne, for Appellant–Defendant.

Pamela Carter, Attorney General, Michael K. Ausbrook, Deputy Attorney General, Indianapolis, for Appellee.

## OPINION

SULLIVAN, Judge.

Natasha L. Wilson (Wilson) pleaded guilty to attempted robbery, a class B felony,[1] and was sentenced to 10 years imprisonment. Wilson appeals the trial court's sentencing order, presenting the following rephrased issues for our review:

(1) Did the trial court fail to consider mitigating circumstances?

(2) Was the trial court required to give Wilson credit toward the service of her sentence for the time she spent in a psychiatric hospital prior to her sentencing hearing?

Wilson and an acquaintance, Curtis Morrow (Morrow), were unhappy with what they

perceived to be a lack of financial liquidity on their part. They therefore determined to steal some money from Wilson's aunt, Evelyn Reed (Reed). Wilson and Morrow drove to Reed's home and gained entry under the pretext that Wilson needed to use her aunt's bathroom. Reed then showed Wilson and Morrow the inside and outside of her home. Morrow subsequently put a gun to Reed's head and took her to the garage, where Wilson was emptying packages from the trunk of Reed's car. Once the packages were out, Morrow ordered Reed into the trunk, and into the trunk she went. Wilson and Morrow then closed the trunk, started Reed's car, and left Reed and the running car in the garage. Fortunately, Reed was able to escape before succumbing to the fumes, and called the police.

Wilson was initially charged with attempted murder and robbery. She ultimately pleaded guilty to attempted robbery as a class B felony, and received the presumptive sentence of 10 years. I.C. 35–50–2–5 (Burns Code Ed.1994). At her sentencing hearing, Wilson presented evidence of her history of mental illnesses, and contends here that the trial court failed to consider this assertedly mitigating evidence.

■■■ Because the sentencing court imposed the presumptive 10–year sentence, we presume that the court considered various potentially aggravating and mitigating factors. *Widener v. State* (1995) Ind., 659 N.E.2d 529. A trial court is required to explain the reasons for the sentence it imposes only if it finds aggravating and mitigating factors. *Id.* Such a finding imposes upon the court the requirement that it identify all significant aggravating and mitigating circumstances, to explain why each circumstance is either aggravating or mitigating, and to signify that the court balanced the mitigating circumstances against the aggravating ones to determine if one type offsets the other. *Id.* The sentencing court in this case explained that the fact that Reed was 69 at the time of the crime, and that a reduced sentence would tend to depreciate the seriousness of the crime, were aggravating cir-

1. I.C. 35–42–5–1 (Burns Code Ed.1994); I.C. 35– 41–5–1 (Burns Code Ed.1994).

cumstances.[2] The court then stated that the facts that Wilson was only 17 and that she had no prior criminal record were mitigating factors. The court concluded that these factors offset one another, and that the presumptive sentence of 10 years was therefore warranted. The trial court did not find Wilson's mental health history to be a mitigating circumstance.

■ Wilson essentially claims that the sentencing court was somehow required to find that the evidence about the state of Wilson's mental health was mitigating. However, while a sentencing court's failure to find mitigating circumstances which are clearly supported by the record may suggest that the court failed to adequately consider them, the finding of mitigating circumstances lies within the sound discretion of the trial court. *Widener, supra,* 659 N.E.2d 529. The record demonstrates that the sentencing court expressly and extensively considered the evidence of Wilson's state of mental health. While Wilson evidently feels that this evidence should be considered mitigating, a trial court need not give the same weight to proffered mitigating circumstances as does the defendant, and is simply not required to find that mitigating factors exist at all. *Id.* The trial court considered the evidence and explained its reasons for failing to find it mitigating, and we cannot say that it abused its discretion in this regard.

■ Wilson also argues that the trial court was required to credit her sentence with the time she spent in a mental institution prior to her sentencing hearing. Wilson states that on April 21, 1995, while incarcerated in the Wells County jail awaiting the disposition of her charges, she was transported, pursuant to a court order, to the Caylor–Nickel Psychiatric Clinic for psychological evaluation. Wilson, however, has failed to provide this court with any documentation to support her claim that her stint at the Caylor–Nickel Clinic was pursuant to a court order. She does, however, append to her brief, without discussion, what appears to be an order of the trial court dated April 27, 1995, denying Wilson credit for any time spent in the facili-

ty. Of course, this is not a part of the record and must be ignored for purposes of this appeal.

■ The State argues that since the record does not contain any order of the trial court committing Wilson to the Caylor–Nickel Clinic, and that since the record fails to indicate the length of time Wilson spent there, Wilson has defaulted upon her opportunity to successfully raise this argument. It is true that a reviewing court may properly consider an issue waived if the appellant fails to provide any evidence in the record to support the claim of error. Ind. Appellate Rule 7.2(A); *In re Walker* (1996) Ind., 665 N.E.2d 586. However, it is also true that the inadequacy or incompleteness of the record does not necessarily constitute grounds for dismissal of an appeal or preclude review on the merits. App.R. 7.2(C). Thus it has been said that while an appellant's failure to bear his burden to present a complete record with respect to an issue raised upon appeal may result in waiver of the issue, such waiver is not automatic. *Clark v. State* (1990) Ind., 562 N.E.2d 11, *cert. denied,* 502 U.S. 961, 112 S.Ct. 425, 116 L.Ed.2d 445 (1991). A reviewing court may order up the missing part of the record upon the showing of certain circumstances, such as the possibility for the imposition of a lengthy sentence, and the strong likelihood that the appellant would succeed with regard to the issue in question. *Id.*

The record here does reveal somewhat more information than either Wilson's or the State's brief suggests. Our reading of the record reveals that Wilson was initially incarcerated in the Wells County jail upon charges of attempted murder and robbery on April 6, 1995. She appears to have been released upon bond on or about May 25, 1995. Wilson was initially given 16 days of credit against her sentence, representing the time she spent in jail from April 6, 1995 until April 21, 1995. At the conclusion of the sentencing hearing, the judge declined to credit Wilson's sentence with time spent at the Caylor–Nickel facility. The judge did,

---

**2.** A recitation that "a reduced sentence would depreciate the seriousness of the crime" supports the imposition of the presumptive sentence. *Barany v. State* (1995) Ind., 658 N.E.2d 60.

however, inquire into when Wilson was released from Caylor–Nickel, and whether Wilson was returned to jail upon her release from the facility. The judge determined that Wilson was released from Caylor–Nickel on May 19, 1995, and was released from jail on May 25, 1995. The judge thus credited Wilson's sentence with the seven days spent in jail following her release from the facility until her release from jail. While the judge and Wilson refer to the month of her release as "March" (Record at 145), we are satisfied from the circumstances that they misspoke and meant to refer to the month of May. We reach this conclusion because the sentencing hearing occurred on December 14, 1995 and Wilson was not incarcerated at any time during March of 1995, and because other portions of the record indicate that Wilson was hospitalized at the Caylor–Nickel facility from April 21, 1995 until May 19, 1995.

The record, therefore, reveals that Wilson was imprisoned in the Wells County jail from April 6, 1995 until April 21, 1995, and again from May 19, 1995 until May 25, 1995. The record also demonstrates that Wilson spent the time from April 21, 1995 until May 19, 1995, in the Caylor–Nickel facility. Wilson was credited with the 24 days she spent in jail awaiting the disposition of her case. She claims that she should also receive credit for the time spent at the Caylor–Nickel Clinic.

I.C. 35–50–6–3(a) provides that individuals earn "one (1) day of credit time for each day he is imprisoned for a crime or confined awaiting trial or sentencing." Thus, in order to determine if Wilson is entitled to credit against her sentence, we must determine whether she was "confined" while at Caylor–Nickel. We note here that this confinement must of necessity be the result of the criminal proceedings in question. Our Supreme Court has determined that the term "confinement" within the context of the credit-time statute is not limited to actual imprisonment, and includes home detention. *Capes v. State* (1994) Ind., 634 N.E.2d 1334.

■ Since our Supreme Court has determined in-home detention may constitute confinement, it is clear that our understanding of the term "confined" should not be strictly limited to conventional penal detention situations. In-home detention, while falling short of actual imprisonment, possesses important characteristics also present in actual imprisonment situations which may define, or at least strongly suggest, the requisite confinement for purposes of credit-time accrual.

Under the home detention statute, the convicted individual is not released from his or her sentence. Rather, individuals convicted of crimes may be placed in home detention "[a]s a condition of probation". I.C. 35–38–2.5–5(a)(Burns Code ed. Supp.1996). Moreover, under home detention programs, an individual is closely monitored, and his personal liberty is substantially curtailed. Individuals placed in home detention are, except in certain limited circumstances, confined to their homes, and may be monitored by an electronic monitoring device. I.C. 35–38–2.5–6. This clearly indicates that, while home detention may provide an individual with somewhat more freedom than would otherwise be provided in a more traditional prison setting, the individual is still under the control of the criminal justice system, and faces time in prison for violation of the conditions of the programs.

■ Thus, if Wilson's stay in the Caylor–Nickel Clinic was ordered by the court simply as another form of imprisonment under which she would ultimately be subject to the supervision and control of the state as a consequence of her pending criminal charges unless and until bond was posted, and if Wilson was therefore not free to leave the clinic or faced return to prison upon completion of her treatment there, she would have been confined pending the resolution of her criminal charges. She would therefore be entitled to credit for the time spent in the clinic. On the other hand, if Wilson's hospitalization was not ordered by the court with the understanding that her confinement upon her pending charges would simply continue in another environment, and if her liberty was not restricted by the control of the state, Wilson would not have been confined.

The record does not make clear whether Wilson was released from the supervision and control of the state when she first entered the Caylor–Nickel Clinic on April 21,

1995, or if the restriction upon her liberty imposed as a result of the pending criminal charges was to continue during the period of her hospitalization. In short, it is impossible to tell from the state of the record as it currently exists whether Wilson's time at the Caylor–Nickel Clinic was "confinement" within the meaning of the credit-time statute. The information needed to resolve our confusion appears to reside with the trial court. We therefore remand the matter to the trial court to re-examine the accrual of Wilson's credit time, and to take appropriate action not inconsistent with this opinion.

The decision of the sentencing court is affirmed in part and remanded in part.

SHARPNACK, C.J., and KIRSCH, J., concur.