## MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



**FILED**

Jul 15 2019, 8:18 am

**CLERK**
Indiana Supreme Court
Court of Appeals
and Tax Court

ATTORNEY FOR APPELLANT

Brian A. Karle
Ball Eggleston, PC
Lafayette, Indiana

ATTORNEYS FOR APPELLEE

Curtis T. Hill, Jr.
Attorney General of Indiana

Benjamin J. Shoptaw
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

Jaylen N. Thomas,
*Appellant-Defendant,*

v.

State of Indiana,
*Appellee-Plaintiff.*

July 15, 2019

Court of Appeals Case No.
18A-CR-3018

Appeal from the Marion Superior Court

The Honorable Mark D. Stoner, Judge

Trial Court Cause No.
49G06-1710-MR-41391

**Najam, Judge.**

# Statement of the Case

Jaylen N. Thomas appeals his fifty-five year sentence, with seven years suspended and three of those seven years suspended to probation, following his conviction for murder, a felony, which Thomas committed at the age of fifteen. Thomas raises a single issue for our review, namely, whether his sentence is inappropriate in light of the nature of the offense and his character.

We affirm.

# Facts and Procedural History

On February 2, 2017, Thomas, who was fifteen years old at the time, "brought up" to two of his juvenile acquaintances that they "should . . . steal" some marijuana from a dealer they knew. Tr. Vol. 3 at 112. The three juveniles agreed, and one of them then contacted Jacob Arnett, who agreed to sell them marijuana. The three juveniles then arranged for transportation to meet with Arnett.

At the designated buy location, Arnett approached the vehicle in which the three juveniles were sitting and gave them the marijuana they had requested in expectation of payment. However, upon receiving the marijuana through the car window, Thomas yelled for the driver to "go," and the driver immediately "spe[d] off." *Id.* at 116. Arnett grabbed onto the window through which he had handed the juveniles the marijuana and hung onto the window even though the vehicle was moving. One of the juveniles then handed Thomas a

firearm and told Thomas to "hit" Arnett. *Id.* at 117. Thomas then shot Arnett in the face and killed him.

[5] Immediately after shooting Arnett, Thomas acted like "it didn't matter." *Id.* at 118. When they returned to one of the juvenile's residences, Thomas and the other juveniles smoked the marijuana they had purchased. Thomas also "smashed" all of their cell phones "with a hammer." *Id.* at 119. Thomas appeared to dispose of the firearm in a "body of water near [the] house." *Id.* Thomas told the other juveniles that, if any of them "sa[id] anything," he would "shoot everybody." *Id.* at 78. After the State charged Thomas with murder, a felony, and the juvenile court waived him into adult court, a jury found him guilty.

[6] At the conclusion of the ensuing sentencing hearing, the trial court pronounced Thomas's sentence as follows:

> The Court notes [Thomas] may have been sexually abused, but I cannot give it significant mitigation[] because [Thomas] has not been forthcoming as to who abused him. It's an easy thing to make up. It's an easy thing to say. I am very sympathetic and will act on it, but I cannot act upon it if . . . the probation department and the State [are] not given an opportunity to corroborate it . . . .
>
> * * *
>
> I also have a hard time . . . finding it to be a significant mitigator about being remorseful or taking responsibility for what you're doing[] if you're not willing to hold [the juvenile who handed

you the firearm ac]countable for his role in this as well. . . . And if they're not prosecuted, they're going to understand that they're above the law . . . [and] do it again, because no one holds them accountable for it.

\* \* \*

In terms of aggravating circumstances the Court does find that [Thomas] is—first off, because of his mental health issues, that he is going to need substantial counseling. The . . . limit[ed] criminal history he does have is related to [a] gun offense, in terms of possession of a firearm[ and having been] shot. He managed to associate himself . . . with people [who] have anti-social behavior. I think the thing that most stunned me . . . is how you all can be involved in shooting [Arnett], bad enough that you didn't give him help, but then you just went and you all just smoked the stuff afterwards, as if it [were] just another day. Absolutely incomprehensible to me that you can have no moral center, to do that.

. . . [T]o just go out and smoke the dope is absolutely reprehensible. . . . The Court notes that the evidence did show [Thomas] . . . did destroy evidence, concealed it. I'm not going to find a significant aggravator of [Thomas] bragging about having no remorse. That strikes me as the mind of a 15-year-old. Threatening other people, that probably is an aggravator . . . .

All told, in balancing all of these, and the Court's mindful that [Thomas] has to do 80 percent of his time so a 45[-]year sentence is 36 actual years, the maximum sentence of 65 is 52 actual years. And looking at all of these things, the Court sentences [Thomas] to a period of 55 years. The Court suspends seven of those years, imposes 48 years executed, seven years suspended[ with] three years' probation. The three years' probation is to help [Thomas] . . . to reintegrate into society, to get any mental health

counseling and/or sexual abuse counseling that he didn't get in the Department of Correction.

*Id.* at 214-18. This appeal ensued.

## Discussion and Decision

[7]     Thomas asserts on appeal that his sentence is inappropriate in light of the nature of the offense and his character. Indiana Appellate Rule 7(B) provides that "[t]he Court may revise a sentence authorized by statute if, after due consideration of the trial court's decision, the Court finds that the sentence is inappropriate in light of the nature of the offense and the character of the offender." This Court has often recognized that "[t]he advisory sentence is the starting point the legislature has selected as an appropriate sentence for the crime committed." *Sanders v. State*, 71 N.E.3d 839, 844 (Ind. Ct. App. 2017). And the Indiana Supreme Court has explained that "[t]he principal role of appellate review should be to attempt to leaven the outliers . . . but not achieve a perceived 'correct' result in each case. Defendant has the burden to persuade us that the sentence imposed by the trial court is inappropriate." *Shoun v. State*, 67 N.E.3d 635, 642 (Ind. 2017) (citations omitted; omission in original).

[8]     Indiana's flexible sentencing scheme allows trial courts to tailor an appropriate sentence to the circumstances presented, and the trial court's judgment "should receive considerable deference." *Cardwell v. State*, 895 N.E.2d 1219, 1222 (Ind. 2008). Whether we regard a sentence as inappropriate at the end of the day turns on "our sense of the culpability of the defendant, the severity of the crime,

the damage done to others, and myriad other facts that come to light in a given case." *Id.* at 1224. The question is not whether another sentence is more appropriate, but rather whether the sentence imposed is inappropriate. *King v. State*, 894 N.E.2d 265, 268 (Ind. Ct. App. 2008). Deference to the trial court "prevail[s] unless overcome by compelling evidence portraying in a positive light the nature of the offense (such as accompanied by restraint, regard, and lack of brutality) and the defendant's character (such as substantial virtuous traits or persistent examples of good character)." *Stephenson v. State*, 29 N.E.3d 111, 122 (Ind. 2015).

[9] Here, the trial court sentenced Thomas to a fifty-five years, with seven years suspended and three of those seven years suspended to probation. The advisory sentence for murder is fifty-five years executed. Ind. Code § 35-50-2-3(a) (2018). However, a trial court may sentence a defendant convicted of murder between forty-five years and sixty-five years. *Id.*

[10] Thomas asserts that his sentence is inappropriate in light of the nature of the offense because his murder of Arnett "cannot be termed 'brutal' in relation to other murders," and because the firearm in question was not Thomas's and was not brought to the scene by Thomas or with Thomas's knowledge. Appellant's Br. at 10. Instead, Thomas asserts that he took the firearm from the other juvenile and shot Arnett "[i]n the heat of the moment" because his age made him particularly susceptible "to make poor decisions when in the presence of a group of peers." *Id.* Thomas also asserts that his sentence is inappropriate in light of his character because he had a good employment history for his age;

that he had no prior adult criminal history and no prior felony-level offenses; that he had a "difficult childhood and lack of family support," including prior physical and sexual abuse and a lack of care after having suffered a gunshot wound at fourteen years old, *id.* at 12; that he has related "untreated mental health issues," *id*. at 13; and that his young age demonstrates that he is capable of rehabilitation.

[11]     We begin our analysis by recognizing that Thomas's age at the time of the murder here is relevant. As our Supreme Court has explained:

> We take this opportunity to reiterate what the United States Supreme Court has expressed: Sentencing considerations for youthful offenders—particularly for juveniles—are not coextensive with those for adults. *See Miller v. Alabama*, 567 U.S. 460, 478-79, 132 S. Ct. 2455, 2469, 183 L. Ed. 2d 407 (2012) (requiring the sentencing judge to "take into account how children are different, and how those differences counsel against irrevocably sentencing them to a lifetime in prison" (footnote omitted)). Thus, both at initial sentencing and on appellate review it is necessary to consider an offender's youth and its attendant characteristics.

> In holding death sentences and mandatory life without parole sentences for those under the age of eighteen to be unconstitutional, the United States Supreme Court has underpinned its reasoning with a general recognition that juveniles are less culpable than adults and therefore are less deserving of the most severe punishments. *See Graham[ v. Florida]*, 560 U.S. [48, 68 (2010)]. This presumption that juveniles are generally less culpable than adults is based on previous and ongoing "'developments in psychology and brain science'" which "'continue to show fundamental differences

between juvenile and adult minds'" in, for instance, "'parts of the brain involved in behavior control.'" *Miller*, 132 S. Ct. at 2464 (quoting *Graham*, 560 U.S. at 68, 130 S. Ct. 2011). The Supreme Court has discerned "three significant gaps between juveniles and adults." *Id.* First, "[a]s compared to adults, juveniles have a 'lack of maturity and an underdeveloped sense of responsibility.'" *Graham*, 560 U.S. at 68, 130 S. Ct. 2011 (quoting *Roper v. Simmons*, 543 U.S. 551, 569, 125 S. Ct. 1183, 161 L. Ed. 2d 1 (2005) (quotation omitted)). Second, "they 'are more vulnerable or susceptible to negative influences and outside pressures, including peer pressure,'" *Id.* (quoting *Roper*, 543 U.S. at 569, 125 S. Ct. 1183), and "they have limited 'contro[l] over their own environment' and lack the ability to extricate themselves from horrific, crime-producing settings." *Miller*, 132 S. Ct. at 2464 (alteration in original) (quoting *Roper*, 543 U.S. at 569, 125 S. Ct. 1183). Finally, "a child's character is not as 'well formed' as an adult's . . . and his actions [are] less likely to be 'evidence of irretrievabl[e] deprav[ity].'" *Id.* (alteration in original) (quoting *Roper*, 543 U.S. at 570, 125 S. Ct. 1183). "These salient characteristics mean that '[i]t is difficult even for expert psychologists to differentiate between the juvenile offender whose crime reflects unfortunate yet transient immaturity, and the rare juvenile offender whose crime reflects irreparable corruption.'" *Graham*, 560 U.S. at 68, 130 S. Ct. 2011 (alteration in original) (quoting *Roper*, 543 U.S. at 573, 125 S. Ct. 1183). Even justices not finding categorical Constitutional violations in these juvenile cases agree with this precept. *See Graham*, 560 U.S. at 90, 130 S. Ct. 2011 (Roberts, C.J., concurring in the judgment) ("*Roper*'s conclusion that juveniles are typically less culpable than adults has pertinence beyond capital cases."); *Roper*, 543 U.S. at 599, 125 S. Ct. 1183 (O'Connor, J., dissenting) ("It is beyond cavil that juveniles as a class are generally less mature, less responsible, and less fully formed than adults, and that these differences bear on juveniles' comparative moral culpability.").

> Consistent with the Supreme Court's reasoning this Court has not been hesitant to reduce maximum sentences for juveniles convicted of murder. In *Carter v. State*, we reduced to fifty years a fourteen-year-old's maximum sixty-year sentence for the brutal murder of a seven-year-old girl, recognizing among other things his young age. 711 N.E.2d 835, 836-37 (Ind. 1999). In the case of a sixteen-year-old who brutally beat his adoptive parents to death while they slept, we reduced a maximum 120-year sentence to eighty years. *Walton v. State*, 650 N.E.2d 1134, 1135, 1137 (Ind. 1995). And in *Widener v. State*, 659 N.E.2d 529, 530 (Ind. 1995), the seventeen-year-old defendant and his two eighteen-year-old cohorts planned to rob a woman as she made a night deposit after work. In executing the crime, the defendant fired multiple shots at the victim, killing her. In the days after the robbery the perpetrators spent the proceeds of their crime at the mall, going to the movies and out to eat. Finding additional mitigating circumstances not recognized by the trial court, we concluded the defendant's seventy-year sentence was manifestly unreasonable and reduced it to an aggregate term of fifty years. *Id.* at 530-31, 534.

*Brown v. State*, 10 N.E.3d 1, 6-8 (Ind. 2014) (reducing a 150-year sentence for a sixteen-year-old defendant to an aggregate term of eighty years on two murder convictions and one robbery conviction); *see also Legg v. State*, 22 N.E.3d 763, 767 (Ind. Ct. App. 2014) (affirming the trial court's imposition of the advisory term of fifty-five years for a sixteen-year-old defendant convicted of one count of murder).

[12] We cannot say that the trial court's imposition of the advisory term of fifty-five years for murder, with seven years suspended and three of those seven years suspended to probation, is such an outlier in light of the nature of Thomas's

offense and his character that our revision of his sentence is required. Indeed, "[w]e are unlikely to consider an advisory sentence inappropriate." *Shelby v. State*, 986 N.E.2d 345, 371 (Ind. Ct. App. 2013), *trans. denied*. A defendant "bears a particularly heavy burden in persuading us that his sentence is inappropriate when the trial court imposes the advisory sentence," *Fernbach v. State*, 954 N.E.2d 1080, 1089 (Ind. Ct. App. 2011), *trans. denied*, to say nothing of an advisory sentence with a portion suspended. And in considering the appropriateness of a sentence, we consider "all aspects of the penal consequences imposed by the trial judge in sentencing," including "whether a portion of the sentence is ordered suspended." *Davidson v. State*, 926 N.E.2d 1023, 1025 (Ind. 2010). Thomas has not met the heavy burden he faces in this appeal.

[13] Regarding the nature of the offense, Thomas had the initial idea to rob a third-party marijuana dealer; in the commission of that offense, he shot Arnett in the face, killing him; and afterward, Thomas destroyed evidence of the robbery and murder. There is no "compelling evidence portraying in a positive light the nature of the offense" such that the advisory sentence, with a significant suspended term, is inappropriate. *Stephenson*, 29 N.E.3d at 122.

[14] Neither is Thomas's sentence inappropriate in light of his character. Again, we acknowledge Thomas's youth at the time of the offense. And we acknowledge, as the trial court did, Thomas's claims of prior abuse, his mental-health issues, and his minor criminal history. But we also acknowledge that Thomas shot Arnett in the face and, immediately afterward, presented himself as if that act

"didn't matter." Tr. Vol. 3 at 118. Thomas then went back to one of his acquaintance's residences and smoked the marijuana they had just stolen; destroyed evidence of the offenses; and threatened to murder others if they reported the incident to authorities. We cannot say that Thomas's character, including his youth, demonstrates "substantial virtuous traits or persistent examples of good character" such that the advisory sentence, with seven years suspended, is an outlier requiring our revision of his sentence. *Stephenson*, 29 N.E.3d at 122; *see Legg*, 22 N.E.3d at 767. Accordingly, we affirm Thomas's sentence.

[15] Affirmed.

Baker, J., and Robb, J., concur.