Daniel K. McCARTY, Appellant,

v.

STATE of Indiana, Appellee.

No. 1185S483.

Supreme Court of Indiana.

Aug. 14, 1986.

Robert R. Garrett, App. Div., Crown Point, for appellant.

Linley E. Pearson, Atty. Gen., Michael Gene Worden, Deputy Atty. Gen., Indianapolis, for appellee.

PIVARNIK, Justice.

Defendant-Appellant, Daniel K. McCarty, was found guilty by a jury in the Lake County Superior Court of the crime of murder. He was subsequently sentenced to a term of forty-five (45) years by the trial court. The only issue he raises for our consideration in this direct appeal is the court's refusal to give Defendant's tendered instructions on lesser included offenses.

The facts show that victim Manuel Salazar, was shot and killed by Appellant in the early morning hours of December 16, 1984, at Rosie O'Grady's Tavern in East Chicago, Indiana. On the evening of December 15, 1984, Tom Wells and James Turpin were working as bartenders at the tavern. At approximately 12:00 midnight, Wells observed that Appellant and several other individuals were fighting. Wells and Salazar, a patron of the tavern, stopped the fight and Wells asked Appellant to leave. Wells later approved of Appellant's staying in the tavern. At approximately 2:00 a.m. Wells observed another fight taking place in the tavern. One Mark Scibor was involved in this fight and after stopping this fight, Wells asked Scibor to leave. Wells then observed that Scibor, Appellant and Appellant's girlfriend, left the bar. It was Wells' observation that Appellant did not appear at that time to be off-balance or have difficulty walking as he left the tavern. It was Wells' testimony that although Appellant had been drinking throughout the evening, he was not so intoxicated that he had trouble walking or speaking. Appellant returned to the tavern approximately one-half to three-quarters of an hour later and stated to Wells he was looking for a diamond ring he had lost. Manuel Salazar was still present in the tavern at that time. Wells observed again at that time that Appellant did not appear to have difficulty speaking or walking. Turpin observed that Appellant's speech did not appear to be slurred and that he did not have trouble walking. Wells offered to help Appellant look for his lost ring but Appellant turned away and walked out of the tavern. Approximately five to ten minutes later, Appellant re-entered the tavern, walking with one of his arms flexible and his other arm stiffened down at his side. He was followed by Scibor, who walked approximately two to three feet behind him. Wells then observed Appellant walked directly up to the bar where Salazar was sitting, tapped Salazar on the shoulder and when Salazar turned around, Appellant shot him in the face with his sawed-off shotgun. John Dado, a patron who was present in the tavern at the time, observed an individual enter the tavern, heard the sound of gunfire, and observed the same individual holding a shotgun down at his side, walking past him. He testified the individual had no difficulty in walking. Salazar died immediately from the wounds of the shotgun blast. At approximately 3:00 a.m., Appellant went to the backdoor of his brother's residence and stated there had been a fight, someone had been shot and he needed a place to go because he was afraid the Brotherhood gang might retaliate. Appellant's brother told Appellant to go home and go to sleep. When Appellant awoke the next morning, he buried his shotgun in his backyard and later returned to his brother's residence, stating he was worried the Brotherhood gang might retaliate and that he was going to go to Illinois. He did

go to Illinois but later turned himself in to the Hammond Police Department.

Appellant's only defense was that he was so intoxicated he was unable to form an intent to commit murder and that he did not remember the incident. The trial court gave an instruction on intoxication as a defense and Appellant makes no complaint in this regard. However, Appellant also tendered four instructions and a verdict form on the subject of voluntary manslaughter, involuntary manslaughter, and the definition of heat of passion. The trial court refused these instructions and Appellant now seeks reversal on this issue.

 Appellant has failed to comply with Ind.R.App.P. 8.3(A)(7), in that he has failed to set out his proposed instructions in the argument section of his brief and the verbatim the objections he made to them before the trial court. The only instructions set out in Appellant's brief is the one given by the trial court in regard to the defense of intoxication. Appellant has accordingly waived this issue. *Bieghler v. State* (1985), Ind., 481 N.E.2d 78, 96, *reh. denied* (1985), *cert. denied* — U.S. —, 106 S.Ct. 1241, 89 L.Ed.2d 349 (1986). The record also discloses a waiver in that the record shows the cover sheet affixed to Appellant's proposed instructions was not signed by either the Appellant or his trial counsel as required by Ind. Code § 35–37–2–2(6)(C). *Bieghler, supra; Hopper v. State* (1985), Ind., 475 N.E.2d 20, 23; *Harding v. State* (1984), Ind., 457 N.E.2d 1098, 1101, *cert. denied,* — U.S. —, 106 S.Ct. 1218, 89 L.Ed.2d 329 (1986); *Askew v. State* (1982), Ind., 439 N.E.2d 1350, 1353–54.

 Furthermore, it appears the trial court was justified in refusing the instructions since there was no evidence which supported instructions on voluntary or involuntary manslaughter or the definition of heat of passion. An instruction is proper only if there is some evidence of probative value to support it. *Dudley v. State* (1985), Ind., 480 N.E.2d 881, 903. Defendant concedes that his defense at trial was entirely predicated upon his advanced state of intoxication so that he did not know what he was doing at the time. The only evidence he offered was that of himself and his brother, that he was too intoxicated to have acted either knowingly or intentionally in shooting Salazar. The facts clearly show that Appellant returned to the tavern to determine if Salazar was still there, left, and returned shortly with a shotgun whereupon he deliberately went to Salazar and shot him. The trial court, accordingly, was justified in finding there was not evidence supporting the giving of instructions on voluntary or involuntary manslaughter. *Hensley v. State* (1986), Ind., 489 N.E.2d 62, 63; *Gary v. State* (1984), Ind., 471 N.E.2d 695, 699.

The trial court is in all things affirmed.

GIVAN, C.J., DeBRULER, and SHEPARD, JJ., concur.

DICKSON, J., concurs in result without opinion.