Larry POTTS, Appellant,

v.

STATE of Indiana, Appellee.

No. 45S00–8907–CR–536.

Supreme Court of Indiana.

June 23, 1992.

Rehearing Denied Sept. 9, 1992.

Albert Marshall, Appellate Div., Crown Point, for appellant.

Linley E. Pearson, Atty. Gen., Arthur Thaddeus Perry, Deputy Atty. Gen., Indianapolis, for appellee.

GIVAN, Justice.

A trial by jury resulted in the conviction of appellant of two counts of Murder and three counts of Attempted Murder. Upon the recommendation of the jury, he received the death penalty.

The facts are: Jerry Oke and Sharon Oke had been married then they separated. However, they continued as business partners in Oke's Lounge. After the separation, Sharon moved in with appellant. However, after appellant had beaten Shar-

on breaking her jaw, she moved back in with Jerry. About this time, appellant told his former wife, Phyllis Potts, that he had beaten Sharon, broken her jaw, and on another occasion choked her until she turned purple. He stated that he was going to kill her and shoot anyone who tried to stop him.

On the evening of October 12, 1987, appellant was in the bar owned by the Okes, and during the course of the evening, he and Sharon argued. At one point, they entered the office and persons outside could hear loud voices as though they were arguing. Shortly thereafter, they emerged from the office and appellant immediately attempted to engage Jerry in a confrontation. However, Jerry declined to take up the challenge. At this point, appellant drew a gun and shot Jerry three times. As Sharon came toward him, pleading with him to stop shooting, appellant shot her and killed her. John Smith, a patron at the bar, was shot in the leg, and Robert Davey, another patron, was shot and killed. Appellant then walked toward Smith who was pleading with him not to shoot him again; however, appellant shot Smith two more times. He also shot Willis Oliver, another patron, in the shoulder.

As appellant continued to shoot, he ran out of ammunition, inserted a fresh clip, and resumed firing. At one point, he walked up to the wounded Jerry Oke and fired another shot, striking Oke in the head. This shot, although not killing Oke, left him virtually blind. After firing fourteen shots, each of which struck someone, appellant walked behind the counter and called the Lake Station Police saying that he had just shot a lot of people in Oke's Lounge and would be waiting to give himself up.

When police arrived and asked him why he had done such a thing, he stated that it was because they all tried to jump him. A little later he stated it was because they would not stop picking on him. Police officers testified that appellant did not appear to be intoxicated although he obviously had been drinking. He was taken to the hospital complaining of back pain where again it was observed that he did not appear to be intoxicated or suffering from a drug overdose or mental illness. Autopsies showed that Sharon died of a gunshot wound to the heart, and Davey died of a gunshot wound to the brain.

█ Appellant claims the trial court erred and committed an abuse of discretion when it failed to instruct the jury on the lesser-included offense of voluntary manslaughter. It is error to fail to give an included-offense instruction only if there is evidence in the record to support such an instruction. *McCarty v. State* (1986), Ind., 496 N.E.2d 379. Appellant claims that because of his argument with Sharon there is a showing of sudden heat; thus the voluntary manslaughter instruction should have been given.

█ However, there is no evidence in this record that appellant's disagreement with Sharon resulted in anything but an exchange of words. We have held that words alone are not sufficient provocation to reduce murder to manslaughter. *Perigo v. State* (1989), Ind., 541 N.E.2d 936. There must be a showing of sufficient provocation to induce such passion as to obscure the reason of an ordinary man. *Fox v. State* (1987), Ind., 506 N.E.2d 1090.

In the case at bar, there is a total absence of such evidence even as to Sharon. There is of course absolutely no evidence in this record to justify the finding of sudden heat in regard to the other victims of the shooting. There is no evidence that any of these people attempted to interfere with appellant or in any way entered into his verbal exchange with Sharon. His cold and calculating firing of shots into persons who were already down and the fact that he deliberately made every shot count belies his claim of sudden heat. The trial court did not err in refusing to instruct the jury concerning voluntary manslaughter.

█ Appellant claims the trial court erred and abused its discretion when it failed to properly credit existing mitigating factors. In addition to his claim of sudden heat, appellant also points to the fact that during the sentencing hearing his children

testified that he had been a kind and generous father to them and further that he had no significant criminal record. Notwithstanding the fact that appellant's children testified in his behalf, their view of their father does not gainsay the circumstances of his performance in the perpetration of the instant crimes.

Although it is true appellant had no significant prior criminal record, the fact that he had physically abused Sharon on former occasions and had told his ex-wife of his intention to kill Sharon and anyone else who interfered is evidence from which the jury and the presiding judge could find that he had committed two murders and three attempted murders in a willful and wanton fashion.

Appellant also contends the trial court should have taken into consideration the mitigating factor that he was on pain medication for his back and had consumed a considerable amount of alcohol that day. However, as above indicated, all persons observing appellant and testifying concerning his condition at the time of the occurrence stated that he did not appear to be intoxicated or under the influence of drugs. The trial court did not err in finding that the aggravating circumstances far outweighed the mitigating circumstances in this case.

■ Appellant claims the death penalty statute, Ind.Code § 35–50–2–9, is unconstitutional as applied to his case. He contends that in view of his mitigating circumstances the death sentence is arbitrary and capricious and constituted cruel and unusual punishment as prohibited by the Eighth Amendment to the United States Constitution, citing *Fleenor v. State* (1987), Ind., 514 N.E.2d 80, *cert. denied*, 488 U.S. 872, 109 S.Ct. 189, 102 L.Ed.2d 158. In that case, however, we held that the trial court had properly considered the factors in mitigation to be of little or no mitigating weight. Similarly, in the case at bar, the trial court thoroughly examined and balanced both the mitigators and aggravators and fully justified the pronounced sentence.

■ Appellant also contends the death sentence is disproportionate to the nature of the offense and the offender. However, as above pointed out, the evidence clearly supports the finding of the jury and the trial court that during the attack appellant's actions were so deliberate that he reloaded his gun and fired additional shots without sufficient provocation into persons begging for mercy. Under these circumstances, the trial judge acted well within the statute and the Indiana and United States Constitutions in imposing the death penalty.

The trial court is affirmed.

SHEPARD, C.J., and KRAHULIK, J., concur.

DeBRULER, J., concurs and dissents with separate opinion in which DICKSON, J., concurs.

DeBRULER, Justice, concurring and dissenting.

The trial court found one mitigating circumstance, namely that appellant had no significant history of prior criminal conduct. The trial court rejected a second mitigating circumstance claimed by the defense, namely that appellant's capacity to conform his conduct to legal requirements was substantially impaired by mental disease. Upon review, I find that the evidence of mental disease, when viewed with an open mind, convincingly supports this second mitigating circumstance.

Appellant was in his forties in 1987 when he shot and killed. In 1970, his first marriage ended. He had four children by that marriage. His second marriage of thirteen years ended in 1986, within a year of these killings. His adult children testified that he was always an alcoholic throughout their lifetimes, but that he had been a good father to them and had not been violent at home.

In 1979 appellant was severely injured on the job. Over the next seven years he underwent four laminectomies, was treated at the Mayo Clinic, suffered constant and severe back pain, and became addicted to a variety of prescription narcotic drugs. In 1982 and 1986 he was diagnosed by differ-

ent psychiatrists as suffering from the mental disease of depression. During this period he was disabled and received social security payments. During this period he reported repeatedly to the emergency room of a hospital, suffering from acute back pain and under the influence of alcohol. His second wife testified that his mental condition deteriorated greatly with the added addiction to pain killing medications and that the one time that he struck her occurred at the end of their marriage.

In January of 1987, shortly after his second divorce, appellant and the victim Sharon Oke moved in together. They argued violently, and in the summer and fall of 1987 he twice beat her and threatened to kill her. A month later, still under the care of a physician for severe back pain, under the influence of Percodan, a prescription medication of the opium family, and alcohol, in the immediate aftermath of a heated argument with Sharon Oke in the tavern, he opened fire upon her and her husband, killing two and wounding three. He then called the police, saying that they should come and get him as he was tired of killing people.

Juxtaposed to this array of impressive evidence is the weak evidence of the two court-appointed physicians. They conferred with appellant briefly in the jail and relied upon his brief statements about his medical history in arriving at their opinions that he was legally sane at the time of the killings. On cross-examination each admitted great gaps in their knowledge of his actual medical history. I cannot but find the mental disease impairment mitigator present in this case. It resembles the impairment due to alcohol and contraband drug abuse present in *Johnson v. State* (1992), Ind., 584 N.E.2d 1092, but is entitled to greater mitigating weight due to appellant's battle with pain and the resulting addiction to legal pain killing drugs and analgesics. Appellant's lack of a history of criminal conduct at age forty is also entitled to greater weight than present in some capital cases. Appellant's circumstance resembles that present in *Fleenor v. State* (1987), Ind., 514 N.E.2d 80 in that case however, there was no extreme physical

ailment and Fleenor fled the state rather than turning himself in. Appellant should fare better than Johnson and Fleenor.

I would affirm this conviction but grant these mitigating circumstances more weight than did the trial court and conclude that they are not outweighed by the aggravating circumstance of the double murder. I.C. 35–50–2–9(b)(8). The death sentence should be vacated and a term of years for each murder imposed.

DICKSON, J., concurs.