Vincent J. PROWELL, Appellant–
Defendant,

v.

STATE of Indiana, Appellee–Plaintiff.

No. 82S00–9407–DP–666.

Supreme Court of Indiana.

Nov. 4, 1997.

Rehearing Denied March 2, 1998.

Dennis A. Vowels, Michael C. Keating, Keating, Bumb & Vowels, Evansville, for Defendant–Appellant.

Pamela Carter, Attorney General, Arthur Thaddeus Perry, Deputy Attorney General, Indianapolis, for Plaintiff–Appellee.

On Direct Appeal

DICKSON, Justice.

In this direct appeal, the defendant-appellant, Vincent J. Prowell, challenges his death sentence for the murders of Denise Powers and Chris Fillbright. On May, 23, 1993, Powers sat in her automobile waiting for Fillbright. As Fillbright approached the automobile door, the defendant shot him in the back of his head, at close range. As Powers was screaming, the defendant shot her twice, also at close range, in the face and in her right side, piercing her lung and heart. An eyewitness observed the shootings and identified the defendant as the shooter. The defendant pled guilty to both murders. The trial court ordered the death penalty.

█ The defendant alleges various errors, four of which are reviewable in this direct appeal:[1] (1) improper admission of victim impact evidence; (2) applicability of the option of life imprisonment without parole; (3) insufficiency of the trial court order imposing the death sentence; and (4) improper consideration of factual issues in sentencing. In addition, the defendant requests that this Court revise his death sentence to a term of years.

### 1. Victim Impact Evidence

The defendant first contends that the substantial amount of victim impact evidence—testimony, poems, and photographs—admitted at his sentencing hearing requires reversal of his sentence.[2]

---

1. The defendant also raises three issues which pertain to the guilt phase of the proceedings: (1) there was an insufficient factual basis for the trial court to accept his plea of guilty; (2) he gave an involuntary confession; and (3) his car was unlawfully searched. We have recently reiterated that, when a defendant pleads guilty, he may challenge only *sentencing* errors on direct appeal, not alleged errors involving his guilty plea or conviction. *Tumulty v. State,* 666 N.E.2d 394 (Ind.1996). The proper forum for the determination of claims such as the lack of factual basis and other attacks upon the conviction itself is the post-conviction proceeding. *Id.* at 396. *See also Tollett v. Henderson,* 411 U.S. 258, 266, 93 S.Ct. 1602, 1607–08, 36 L.Ed.2d 235, 243

(1973) (the entry of a guilty plea waives any constitutional claims of error in the admission or exclusion of evidence prior to its entry). *See, e.g., Butler v. State,* 658 N.E.2d 72 (Ind.1995). The defendant, in his reply brief, acknowledges this longstanding rule, but claims that the purposes of that rule do not apply to a death penalty case and that judicial economy would best be served by this Court deciding these claims on direct appeal. We disagree.

2. The State does not dispute that certain impact evidence was improperly admitted. However, the State contends that "any error in its admission does not require reversal." Brief of Appellee at 13.

In *Bivins v. State,* 642 N.E.2d 928 (Ind. 1994), *cert. denied,* —— U.S. ——, 116 S.Ct. 783, 133 L.Ed.2d 734 (1996), we explained that, in death penalty proceedings, courts may consider only the aggravating circumstances specified in the death penalty statute. Thus, "the admissibility of the victim impact evidence . . . hinges upon its relevance to the death penalty statute's aggravating and mitigating circumstances." *Id.* at 957.

■ It is significant that the present case does not involve a jury, whose opaque "yes" or "no" recommendation would not reflect the factors leading to its decision. *See* IND. CODE 35–50–2–9(d) (If "the judgment was entered on a guilty plea, the court alone shall conduct the sentencing hearing."). In capital cases, the trial court must enter a written sentencing order to ensure that only proper matters are considered by the trial court. *Benirschke v. State,* 577 N.E.2d 576, 579 (Ind.1991), *cert. denied,* 505 U.S. 1224, 112 S.Ct. 3042, 120 L.Ed.2d 910 (1992); *Daniels v. State,* 561 N.E.2d 487, 491 (Ind.1990).

■ The trial court's sentencing order disclosed that the trial court based its sentencing judgment upon the finding and weighing of the charged aggravating factor (the defendant committed two murders) and several mitigating factors (no significant history of prior criminal conduct, youth in a dysfunctional family, and possible exposure to physical and emotional abuse). Record at 270–71. Because the trial court's sentencing order does not refer to any evidence characterized by the defendant as "victim impact evidence," we conclude that any alleged error in admitting such evidence did not affect the sentence imposed. We "must disregard any error or defect in the proceeding which does not affect the substantial rights of the parties." Ind.Trial Rule 61.

### 2. Option of Life Imprisonment Without Parole

The second sentencing issue raised by the defendant is the applicability of Indiana Code Section 35–50–2–9(g), which gives the judge the option of sentencing the death-qualified defendant to life in prison without parole as an alternative to sentencing the defendant to death. This section took effect on July 1, 1993 and the Act specifically provided that the life without parole provision "only appl[ies] to murders committed after June 30, 1993." P.L. 250–1993 § 3. The murders in this case were committed on May 27, 1993.

The defendant claims that this limiting provision denies him equal protection of the law. He acknowledges that this question was decided adversely to him in *State v. Alcorn,* 638 N.E.2d 1242, 1245 (Ind.1994), but claims that *Alcorn* was wrongly decided. We decline to revisit *Alcorn.*

### 3. Sentencing Order

The third sentencing error claimed by the defendant is an alleged deficiency in the sentencing order. He claims that the order: (1) lacks the specific facts and reasons which support the court's finding of aggravating and mitigating circumstances; and (2) is perfunctory and conclusory in the manner in which it describes how the aggravators and mitigators have been balanced.

■ In a capital sentencing order, the trial court must: (1) identify each mitigating and aggravating circumstance found; (2) include the specific facts and reasons which lead the court to find the existence of each circumstance; (3) articulate that the mitigating and aggravating circumstances have been evaluated and balanced in determination of the sentence; and (4) set forth the trial court's personal conclusion that the sentence is appropriate punishment for this offender and this crime. *Harrison v. State,* 644 N.E.2d 1243, 1262 (Ind.1995). This evaluation need not be lengthy, merely thorough. *See Roark v. State,* 644 N.E.2d 565, 571 (Ind.1995).

■ In identifying the aggravating circumstances, the trial court expressly found that the State established the charged aggravating factor listed in the death penalty statute by proving "beyond a reasonable doubt that the defendant . . . committed two murders," Record at 269, because "[t]he Defendant . . . plead guilty to Murder . . . by knowingly killing Denise Powers . . ." and that "[t]he Defendant . . . plead guilty to Murder . . . by knowingly killing Christopher Fillbright . . ." *Id.* The recitation of the

facts and reasons for this particular aggravator will often be brief when the defendant has pled guilty, because this "aggravating circumstance [is] by [its] nature factual and, if listed, requires no further substantiation." *Hammons v. State*, 493 N.E.2d 1250, 1254 (Ind.1986). The trial court satisfied the *Harrison* standard for the discussion of aggravating circumstances and supporting facts and reasons.

In its discussion of mitigating circumstances, the sentencing statement specifically addressed each statutory mitigating circumstance, expressly determining which applied in this case. The first was that "[t]he defendant has no significant history of prior criminal conduct." Record at 270. *See* IND.CODE § 35–50–2–9(c)(1) (1993). Recognizing the difficulty of including the facts and reasons to explain a *lack* of a criminal history—as opposed to stating reasons for finding that the defendant *has* a criminal history—we observe that the trial court, in its sentencing order specifically noted its consideration of the "information contained in the presentence report filed by the Adult Probation Department and the independent report submitted by the defendant." Record at 271. The second mitigating circumstance identified by the trial court was "evidence of other circumstances appropriate for consideration as mitigating circumstances...." Record at 270. *See* IND.CODE § 35–50–2–9(c)(8) (1993). The specific facts and reasons which led the court to find the existence of this circumstance were that "the defendant grew up in a dysfunctional family and may have been subjected to physical and emotional abuse." Record at 270. This is sufficient.

As to its articulation of the evaluation and balancing of aggravating and mitigating circumstances, the trial court's order states that it finds the "aggravating circumstances far outweigh any consideration of mitigating circumstances" and that "having considered all the evidence in the case, the aggravating and mitigating circumstances presented, ... the presentence report filed by the Adult Probation Department and the independent report submitted by the defendant, ... the imposition of the death penalty as to the defendant ... is appropriate and proper...." Record

at 271. This balancing description is similar to ones accepted as adequate in other cases. *See Benirschke v. State*, 577 N.E.2d 576, 581 (Ind.1991), *cert. denied,* 505 U.S. 1224, 112 S.Ct. 3042, 120 L.Ed.2d 910 (1992); *Williams v. State*, 669 N.E.2d 1372, 1389 (Ind.1996), *cert. denied,* —— U.S. ——, 117 S.Ct. 1828, 137 L.Ed.2d 1034 (1997). The trial court's statement, although brief, adequately establishes that the court evaluated and balanced the mitigating and aggravating circumstances.

### 4. Consideration of Factual Issues in Sentencing

The defendant contends that the trial court erred in its factual considerations regarding sentencing because it: (1) failed to find the defendant's mental condition as a mitigating factor; and (2) improperly found and considered non-statutory aggravating circumstances.

First, the defendant claims that the trial court failed to give mitigating weight to the testimony presented by defense neuropsychologist, Dr. Joel Dill, because the sentencing order states that "[t]here was no evidence that the defendant ... was under any type of influence of extreme mental or emotional disturbance at the time the murders ... were committed," and "[t]here is no evidence that the defendant's capacity to appreciate the criminality of his conduct or to conform his conduct to the requirement of the law, was substantially impaired as a result of mental disease or defect or of intoxication." Record at 270. Dr. Dill testified that the defendant has a paranoid personality disorder, an essential feature of which "is the general expectation of being exploited, interpreting the actions of people as being deliberating demeaning or threatening and usually are present in a variety of contexts" which results in the defendant reading "hidden or demeaning or threatening meanings into benign remarks or events." Record at 662–63. He testified that the defendant's scores on tests indicated that the defendant "would be impulsive, tending to act out of his emotions." Record at 666. Dr. Dill also testified that the personality disorder was caused by "problems or difficulties that date back to childhood." Record at 661.

While a trial court's failure to find mitigating circumstances clearly supported by the record may imply that they were overlooked and not properly considered, the sentencing judge is not obligated to credit or weigh such evidence the same as the defendant does, nor must the judge necessarily explain the lack of a mitigation finding. *Games v. State,* 535 N.E.2d 530, 545 (Ind. 1989), *cert. denied,* 493 U.S. 874, 110 S.Ct. 205, 107 L.Ed.2d 158; *Hammons v. State,* 493 N.E.2d 1250, 1254–55 (Ind.1986).

The defendant argues that the evidence demonstrates the existence of mitigating circumstances under Indiana Code Section 35–50–2–9(c)(2) and (6). However, to constitute such statutory mitigators, the evidence must show that the defendant suffered from an "*extreme* mental or emotional disturbance when the murder was committed" or that his "capacity to appreciate the criminality of [his] conduct or to conform that conduct to the requirements of law was *substantially impaired* as a result of mental disease or defect." IND.CODE §§ 35–50–2–9(c)(2); (c)(6) (1993) (emphasis added). Addressing these factors, the trial court expressly found that "[t]here was no evidence that the defendant ... was under any type of influence of extreme mental or emotional disturbance at the time the murders ... were committed," and "[t]here is no evidence that the defendant's capacity to appreciate the criminality of his conduct or to conform his conduct to the requirement of the law, was substantially impaired as a result of mental disease or defect or of intoxication." Record at 270. We decline to find that the trial court overlooked or improperly considered the evidence. The trial court did not err in its determination that the defendant failed to establish the existence of the (c)(2) and (c)(6) mitigators.

Because of his citation to *Evans v. State,* 598 N.E.2d 516 (Ind.1992), we understand the defendant also to argue that the trial court should have considered the defendant's mental condition as a mitigating circumstance pursuant to Indiana Code Section 35–50–2–9(c)(8) ("Any other circumstances appropriate for consideration."). We find, however, that the trial court did expressly find that the defendant's circumstances qualified for consideration as an "any other" mitigating circumstance permitted by section (c)(8). The court found, as a mitigating circumstance, that "the defendant grew up in a dysfunctional family and may have been subjected to physical and emotional abuse." Record at 270. We conclude that the trial court neither overlooked nor failed to consider the defendant's mental condition as a (c)(8) mitigating circumstance.[3]

The defendant next asserts that, "[i]n his sentencing order," the trial judge improperly "considered the 'nature and circumstances of the offense,' which is not a statutory aggravator." Brief of Defendant–Appellant at 57. We first observe that the circumstances of the crime often provides an appropriate context for consideration of the alleged aggravating and mitigating circumstances. Inclusion of the nature and circumstances of the offense in a trial court's sentencing order does not necessarily compel a conclusion that such matters were improperly considered and weighed as aggravating circumstances.

In the present case, contrary to the defendant's assertion, there is no such reference in the court's written sentencing order. The reference to the nature and circumstances of the offense occurred during the trial court's oral remarks at the time of sentencing. There are two reasons why these comments do not amount to the improper consideration of a non-statutory aggravating circumstance. First, as discussed above, our capital sentencing procedure requires that the trial court identify and articulate its reasons in a separate written sentencing order. In the absence of clear contrary indications in the record, we will assume the

---

3. Additionally, we note that, upon pronouncing sentence, the trial court stated that it had been faced with the decision to impose the death penalty once before. In that situation, the trial court noted that the defendant was mentally ill and that he "rejected the death penalty recommenda-
tion from the Jury on that case because I personally do not believe that we should execute mentally ill individuals. That case and the [present case] do not have any similarities...." Record at 931.

sentencing order fully discloses the factors considered by the sentencing judge. *Cf. Bellmore v. State,* 602 N.E.2d 111, 128–29 (Ind.1992) (reversing because trial court's oral explanation upon announcing his decision to impose the death penalty clearly named a non-statutory factor as the determinative factor, notwithstanding omission of said factor in written sentencing statement). Second, notwithstanding the trial court's perfunctory statement that it must consider the nature and circumstances of the crime, the trial judge's oral comments, read in context, consider the nature and circumstance of mitigating, not aggravating, factors. At the sentencing hearing, the defendant asked the trial court to find a mitigating circumstance because he "acted under strong provocation." Record at 142. The defendant's version of the murders included a contention that Fillbright approached him, made derogatory racial remarks, and physically threatened him. The defendant claims he shot Fillbright because Fillbright made a movement which the defendant interpreted as "maybe going for a gun." Record at 115. When Powers then also moved inside the car, the defendant fired at her. The trial court, in its sentencing remarks, expressed doubt as to this explanation:

> Another [pre-sentencing] statement revealed that the Defendant believed Mr. Fillbright was about to pull a gun. I do not believe this, as Mr. Fillbright was shot in the back of the head, execution style, at close range. The Defendant also stated he believed Ms. Powers was attempting to pull something from her purse. All the physical evidence shows that Ms. Powers was shot in the back of the head, in the side of her face as she was attempting to get out of her car. The Defendant's explanation for shooting Ms. Powers is just not believable.

Record at 929–30. The trial court further mentioned the fact that the defendant drove a car over Fillbright, which is also related to the defendant's mitigation claim that he felt threatened. We agree with the State's argument that consideration of the defendant's driving conduct was relevant to show that Fillbright "could not possibly have been a threat to [the] defendant" after he had just

been shot in the head at close range. Brief of Appellee at 24.

We conclude that the trial court properly considered both aggravating and mitigating circumstances and imposed the death penalty in accordance with Indiana law.

### 5. Review of Sentence

The defendant's final contention is that this Court should modify and revise his death sentence to a term of years. He urges that such a revised sentence is appropriate because of various mitigating factors: "the defendant's total lack of criminal history, his violent and bizarre childhood, his recognized mental illness which contributed to the commission of the crime, his limited intelligence, and his adjustment to institutionalization." Brief of Defendant–Appellant at 62.

This Court is empowered to review and revise criminal sentences. IND. CONST. art. 7, § 4. Sentences imposing the death penalty are subject to our "automatic review" under the Court's rules. IND.CODE § 35–50–2–9(j) (Supp.1996). Our sentence review rule prescribes that a reviewing court "will not revise a sentence authorized by statute except where such sentence is manifestly unreasonable in light of the nature of the offense and the character of the offender." Ind.Appellate Rule 17(B). "Manifestly" is the adverb form of "manifest" which dictionaries define to mean "[c]learly apparent to the sight or understanding; obvious," AMERICAN HERITAGE DICTIONARY, 763 (2d College Ed.1985), and "readily perceived by the eye or the understanding; evident; obvious; apparent; plain," RANDOM HOUSE COLLEGE DICTIONARY 813 (Revised Ed.1984). Thus, the issue is not whether in our judgment the sentence is unreasonable, but whether it is clearly, plainly, and obviously so. In reviewing death sentences, however, this Court has noted that these harsh requirements "stand more as guideposts for our appellate review than as immovable pillars supporting a sentence decision." *Spranger v. State,* 498 N.E.2d 931, 947 n. 2 (1986), *cert. denied,* 481 U.S. 1033, 107 S.Ct. 1965, 95 L.Ed.2d 536 (1987). Because the defendant has requested our independent review of his sentence, we now examine whether, in light of the

nature of the offense and the character of the offender, the death penalty is manifestly unreasonable.

▇▇▇ The nature of the offense is clear. The defendant pled guilty to two counts of Murder: the knowing killings of Denise Powers and Christopher Fillbright with a handgun. The defendant presents conflicting versions of the incident. At the guilty plea hearing, the defendant testified that as he was returning from the mailbox, Fillbright made "racial slurs and insinuation," Record at 512, whereupon the defendant took his mail to his apartment, came back out into the parking lot, and shot Fillbright and Powers, using the weapon he usually carried with him. Record at 513. The defendant admitted that, when he shot Fillbright and Powers, he had "a high probability of knowing" that the shots could kill the victims. Record at 522. In his tape-recorded confession given to police on the morning following the murders, however, the defendant denied hearing any words from Fillbright or Powers. The defendant told police that, as he returned to his apartment from the common mail box area of his apartment complex, he observed Powers and Fillbright in the yard outside Powers's apartment. Although Fillbright said nothing, the defendant perceived Fillbright to exhibit a menacing look. About twenty minutes later, the defendant left his apartment and walked to his car. There the defendant observed Fillbright with "this look like he was about to draw on me." Record at 529.[4] The defendant told police that when Fillbright, about to enter another car parked about six feet away, appeared to reach under his shirt, "something just clicked in me" and he shot Fillbright. Record at 535. He said that he then shot Powers inside the car when he saw her reach toward her purse.

Denise Powers had been waiting for Fillbright. As Fillbright approached the car and reached for the door handle, the defendant shot him in the back of his head at close range, killing him almost instantly, and then walked around to the driver's side door and shot Powers. An eyewitness testified that

Powers was heard crying and screaming, "Help, help me please, help." Record at 582. The forensic pathologist who performed the autopsy testified that he believed Powers had turned her head and was looking at the defendant as he shot her in the face. While leaving the scene of the shootings, the defendant drove his car over Fillbright.

It is regarding the character of the offender that the defendant directs most of his argument seeking our revision of the sentence. Prior to these murders, the defendant had no criminal record. Witnesses described him as intelligent and regularly employed. His family has several members with college educations and advanced degrees. As discussed in Part 4, *supra*, a neuropsychologist, Dr. Dill, opined that the defendant's paranoid personality disorder results in the defendant perceiving threatening meanings from benign remarks or events.

The defendant's mother testified in considerable detail regarding the abusive relationships in which she was involved following her divorce when the defendant was two years of age. He experienced frequent physical violence and emotional abuse of both his mother and himself. The defendant's mother testified that as a child, he was extremely frightened, often fearing "for his life." Record at 713. He attended private schools because he was frightened of people and needed to avoid the larger crowds at public schools. Several other witnesses testified that the defendant, both during childhood and as an adult, had a history of unrealistically perceived threats and unfounded fears for his safety. The evidence regarding the defendant's childhood and adult life appears consistent with Dr. Dill's opinion that the defendant suffers from paranoid personality disorder which may have been a factor in the defendant's conduct in committing the murders. The State did not present any contrary psychological testimony or evidence about the defendant's life experiences.

However, considering both the nature of the murders and the defendant's character as

---

4. A transcription of the audiotaped confession was admitted for limited purposes during the hearing at which the plea was taken, Record at 524–39, and then later, during the sentencing hearing, it was readmitted without limitation and played in open court. Record at 615.

revealed by the record, we are not persuaded to revise the sentence and we conclude that the trial court properly imposed the death penalty in accordance with Indiana law.

## Conclusion

The judgment of the trial court and the sentence of death is affirmed. Further proceedings shall be in accordance with Indiana Criminal Rule 24(G).

SHEPARD, C.J., and SELBY and BOEHM, JJ. concur.

SULLIVAN, J., dissents with separate opinion.

SULLIVAN, Justice, dissenting.

I agree with the majority that the trial court's decision to sentence defendant Vincent J. Prowell to death for the terrible murders of Denise Powers and Christopher Fillbright was in accordance with Indiana law. But Article VII, § 4, of Indiana Constitution provides that "[t]he Supreme Court shall have, in all appeals of criminal cases, the power to review and revise the sentence imposed." This Court's review of capital cases under Article VII is part and parcel of the sentencing process. *Cooper v. State,* 540 N.E.2d 1216, 1218 (Ind.1989).

The approach we take in reviewing death sentences was well illustrated in the recent case of *Peterson v. State* where, after analyzing the trial court sentencing determination for error and finding none, we proceeded

with our "duty under the Constitution and statutes of Indiana to determine whether in our judgment the death penalty is appropriate for the defendant under the circumstances of th[e] case. Ind. Const. art. VII, § 4; Ind.Code § 35–50–2–9(j) (Supp.1996); *Lowery v. State,* 547 N.E.2d 1046, 1059 (Ind. 1989), *cert. denied,* 498 U.S. 881, 111 S.Ct. 217, 112 L.Ed.2d 176 (1990)." *Peterson v. State,* 674 N.E.2d 528, 542 (Ind.1996), *reh'g denied.*

In this case, the trial court found the aggravating circumstance alleged, that the defendant committed two murders, Ind.Code § 35–50–2–9(b)(8) (Supp.1992), to have been proven beyond a reasonable doubt.[1] Based on my review of the record and the law, I agree with this conclusion and would further conclude that the murders were intentional. In most circumstances, I consider this so-called "multiple murder" aggravator, where the murders were intentional, to be entitled to the highest weight. *Accord, Roche v. State,* 596 N.E.2d 896, 902 (Ind.1992) (concurring op. of DeBruler, J., in which Krahulik, J., concurred). However, with only one exception (*Potts v. State,* involving an individual no longer subject to a death sentence), every death penalty case we have reviewed on direct appeal where the (b)(8) "multiple murder" aggravator was alleged either has involved more than two murders or has relied on one or more additional aggravating circumstances.[2] That is, there is no person

1. Before a death sentence can be imposed, our death penalty statute requires the State to prove beyond a reasonable doubt at least one aggravating circumstance (often referred to as an "aggravator") listed in subsections (b)(1) through (b)(12) of the statute. Ind.Code § 35–50–2–9 (Supp.1992).

The (b)(8) aggravator provides: "The defendant has committed another murder, at any time, regardless of whether the defendant has been convicted of that other murder." *Id.* We have held that this aggravator is available only in cases in which the defendant is tried in the same proceeding for the multiple murders alleged in the aggravating circumstances. *Williams v. State,* 669 N.E.2d 1372, 1389 (Ind.1996), *reh'g denied, cert. denied,* —— U.S. ——, 117 S.Ct. 1828, 137 L.Ed.2d 1034 (1997); *State v. McCormick,* 272 Ind. 272, 278, 397 N.E.2d 276, 280 (1979).

Other aggravators cited in note 2 below are set forth in subsections (b)(1)(B) ("The defendant

committed the murder by intentionally killing the victim while committing or attempting to commit ... Burglary."); (b)(*l*)(G) ("The defendant committed the murder by intentionally killing the victim while committing or attempting to commit ... Robbery."); (b)(3) ("The defendant committed the murder by lying in wait."); (b)(6) ("The victim of the murder was a ... law enforcement officer, and either: (A) the victim was acting in the course of duty; or (B) the murder was motivated by an act the victim performed while acting in the course of duty."); and (b)(7) ("The defendant has been convicted of another murder."). Ind.Code § 35–50–2–9 (Supp.1992).

2. We have reviewed death sentences on direct appeal in the following cases where the (b)(8) "multiple murder" aggravator was the only aggravating circumstance alleged: *Baird v. State,* 604 N.E.2d 1170 (Ind.1992) (three murders; death sentence affirmed); *Potts v. State,* 594 N.E.2d 438 (Ind.1992) (two murders; death sen-

currently subject to a death sentence in Indiana for whom the sole aggravating circumstance supporting the death sentence was the commission of two murders. And the circumstances of this crime appear to be such that none of the other statutory aggravating circumstances were *available* to be alleged.[3] Thus, while the intentional killing of the two victims in this case is entitled to weight in the high (if not highest) range, it is nevertheless the case that had one of the victims been fortunate enough to survive the attack, this could not have been a death penalty case at all. The fact that this case differs from all but one (*Potts*) of the death penalty cases we have reviewed involving the (b)(8) multiple murder aggravator does not mean that the death penalty is inappropriate in this case. But it may mean that the weight given the aggravating circumstance here should differ from that given the aggravating circumstances in those other cases.

The trial court in this case found two mitigating circumstances to exist. The trial court's sentencing order in this regard read as follows:

> tence affirmed; death sentence later modified to 210 years by agreement of the parties); *Conner v. State*, 580 N.E.2d 214 (Ind.1991) (three murders; death sentence affirmed).

We have reviewed on direct appeal death sentences imposed in reliance on the (b)(8) "multiple murder" aggravator and one or more additional aggravating circumstances in the following cases: *Peterson v. State*, 674 N.E.2d 528 (Ind. 1996) (two murders; also (b)(7) (defendant convicted of another murder (two)) aggravator; death sentence affirmed); *Williams*, 669 N.E.2d at 1372 (three murders; also (b)(1) (intentional killing during robbery) aggravator; death sentence affirmed); *Holmes v. State*, 671 N.E.2d 841 (Ind.1996) (two murders; also (b)(1) (intentional killing during robbery) aggravator; death sentence affirmed), *reh'g denied, cert. denied,* — U.S. ——, 118 S.Ct. 137, — L.Ed.2d —— (1997); *Roark v. State*, 644 N.E.2d 565 (Ind. 1994) (three murders; also (b)(11) (victim (two) under age twelve) aggravator; death sentence modified to 200 years); *Rouster v. State*, 600 N.E.2d 1342 (Ind.1992) (two murders; also (b)(1) (intentional killing during robbery) aggravator; death sentence affirmed); *Williams v. State*, 600 N.E.2d 1342 (Ind.1992) (same); *Roche v. State*, 596 N.E.2d 896 (Ind.1992) (same); *Trueblood v. State*, 587 N.E.2d 105 (Ind.1992) (three murders; also (b)(11) (victim (two) under age twelve) aggravator; death sentence affirmed);

The Court finds that the mitigating circumstances contained in [Ind.Code §] 35–50–2–9(c)(1) and (c)(8) apply to the defendant in that he has no significant history of prior criminal conduct and grew up in a dysfunctional family and may have been subjected to physical and emotional abuse. (R. at 271.) As the majority notes, there was no elaboration by the trial court on these findings in its order.

Based on my review of the record and the law, I analyze the mitigating circumstances entitled to weight in this case as follows.

First, the defendant pled guilty to the crimes charged. A guilty plea demonstrates a defendant's acceptance of responsibility for the crime and at least partially confirms the mitigating evidence regarding his character. *Scheckel v. State*, 655 N.E.2d 506, 511 (Ind. 1995). A guilty plea further extends a benefit to the state and the victim or the victim's family by avoiding a full-blown trial. *Id.* Thus, a defendant who pleads guilty deserves to have some mitigating weight extended to the guilty plea in return. *Id. Accord, Widener v. State*, 659 N.E.2d 529, 534 (Ind.1995); *Hardebeck v. State*, 656 N.E.2d 486, 493 (Ind.

> *Hough v. State*, 560 N.E.2d 511 (Ind.1990) (two murders; also (b)(1) (intentional killing during robbery) aggravator; also (b)(7) (defendant convicted of another murder) aggravator; death sentence affirmed); *Townsend v. State*, 533 N.E.2d 1215 (Ind.1989) (two murders; also (b)(1) (intentional killing during robbery) aggravator; death sentence affirmed); *Fleenor v. State*, 514 N.E.2d 80 (Ind.1987) (two murders; also (b)(1) (intentional killing during burglary) aggravator; also (b)(3) (murder by lying in wait) aggravator; death sentence affirmed); *Thompson v. State*, 492 N.E.2d 264 (Ind.1986) (two murders; also (b)(1) (intentional killing during burglary) aggravator; also (b)(7) (defendant convicted of another murder) aggravator; death sentence affirmed); *Wallace v. State*, 486 N.E.2d 445 (Ind.1985) (four murders; also (b)(1) (intentional killing during burglary) aggravator; death sentence affirmed); *Bieghler v. State*, 481 N.E.2d 78 (Ind.1985) (two murders; also (b)(1) (intentional killing during burglary) aggravator; death sentence affirmed); *Moore v. State*, 479 N.E.2d 1264 (Ind.1985) (three murders; also (b)(6) (victim was law enforcement officer) aggravator; death sentence affirmed).

**3.** *Cf. Harrison v. State*, 644 N.E.2d 1243 (Ind. 1995) ((b)(8) multiple murder aggravator apparently available but not alleged), *cert. denied,* —— U.S. ——, 117 S.Ct. 307, 136 L.Ed.2d 224 (1996).

Ct.App.1995), *trans. denied. See also Duvall v. State,* 540 N.E.2d 34, 35 (Ind.1989); *Davis v. State,* 477 N.E.2d 889, 899 (Ind.1985) (death penalty case); *Lang v. State,* 461 N.E.2d 1110, 1112–1113 (Ind.1984); *Singer v. State,* 674 N.E.2d 11, 14 (Ind.Ct.App.1996). Under the circumstances of this case, I would assign weight to this mitigating circumstance in the low range.

The trial court found that defendant grew up in a dysfunctional family and may have been subjected to physical and emotional abuse. The evidence presented at the sentencing hearing tended to show that defendant grew up in Chicago with his mother and brother. When the defendant was two years old, his mother was involved in an abusive relationship with a man named Raymond Edwards. From the time defendant was seven years old until the time he moved out at age eighteen, an individual named Tony Johnson lived with defendant's mother. Their relationship was characterized by periodic violence, some of which affected the two children. There was also evidence that while Tony Johnson insisted that he be considered a man and presented himself to the world as a man, he was in fact a woman (or at least had the external physical characteristics of a woman). This situation created tension in the home and resulted in the children being taunted by other children in the neighborhood. On the other hand, the defendant had the regular care and affection of two grandmothers. And his mother, a college graduate, made arrangements for him to attend a variety of public and private schools in order to meet his educational needs. Defendant graduated from high school and attended some college.

Dr. Dill, a psychologist, administered certain tests to the defendant. Dr. Dill testified at the sentencing hearing that the defendant suffered from "Paranoid Personality Disorder." Dr. Dill illustrated manifestations of this disorder in defendant's reclusiveness and his unwarranted barricading of himself in his room at home; wearing a flak jacket; quitting a job out of fear after a co-worker had been killed; and other instances of suspiciousness of others and fear of danger generally.

I find that defendant's unwarranted heightened suspiciousness of others and unwarranted heightened fear of danger generally are attributable to, and should be considered in support of, the claim of difficulties of his upbringing. I do not find Dr. Dill's testimony supportive of a separate claim that defendant suffered from a mental impairment that is entitled to mitigating weight. As to the proffered mitigating circumstance of the defendant's difficult upbringing, I would assign it weight in the low range.

The trial court found that the defendant had "no significant history of prior criminal conduct." (R. at 271.) In fact, the record suggests this to be an understatement. There is absolutely nothing of record to suggest that defendant ever had any difficulty with the law whatsoever—either as a juvenile or an adult. The section of the presentence investigation report prepared by the probation department dealing with prior legal history contains the following entries: (a) Juvenile: "The defendant denied any juvenile record, and this investigator was unable to locate any evidence of a juvenile record for the defendant;" (b) Adult: "The defendant is currently charged with two counts of murder. He has no prior record." (c) Criminal Orientation: "The defendant has no prior involvement with the legal system. His driver's license is current and has never been suspended." (R. at 259.)

In my view, absence of criminal history is the weightiest of all mitigating circumstances. One who has conformed his or her conduct to the dictates of our society is entitled to consideration therefor upon committing a first offense. The defendant here, age 30, maintained a blemish-free legal history both in Chicago where he lived for most of his adulthood and in Evansville where he had lived for a short period of time.[4] Given the

---

4. Defendant had moved to Evansville in January, 1993, in order to be near his mother who had moved there two years earlier. He moved in with his mother and her then-current companion, unaware that they were drug-dealers. Two

months later, his mother and her companion were arrested. His mother testified that she kept any knowledge or evidence of their cocaine enterprise from the defendant (prosecutor questioning):

absence of any criminal history whatsoever, even the prosecutor expressed bewilderment over these crimes: "I don't think anyone would have suspected that he was likely to commit this crime before he committed this." (R. at 886.) In these circumstances, I would assign weight to the absence of prior criminal history in the highest range.

The multiple murder aggravator is entitled to great weight and because it is, I agree that the trial court's sentencing determination is in accordance with Indiana law. But in the exercise of this Court's "duty under the Constitution and statutes of Indiana to determine whether in our judgment the death penalty is appropriate for the defendant under the circumstances of th[e] case," *Peterson*, 674 N.E.2d at 542, I am unable to find that the aggravating circumstances outweigh the mitigating circumstances. The law requires that aggravating circumstances outweigh mitigating circumstances for a death sentence to be imposed. Ind.Code § 35–50–2–9(g)(2) (Supp.1992). I would remand this case to the trial court with instructions to vacate the sentence of death and impose the maximum term of years prescribed by the legislature for these offenses.

---

Q. [I]t's your testimony that Vincent was not aware that any of that [dealing cocaine] was going on?
A. No, Vincent was not, no, he was not. That was not Vincent's business.
Q. You didn't share any of that with him?

A. No, I didn't, no, I didn't want Vincent involved in that.
(R. at 731.)