## MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



FILED

Mar 12 2019, 9:05 am

CLERK
Indiana Supreme Court
Court of Appeals
and Tax Court

ATTORNEY FOR APPELLANT

R. Patrick Magrath
Madison, Indiana

ATTORNEYS FOR APPELLEE

Curtis T. Hill, Jr.
Attorney General of Indiana

Monika Prekopa Talbot
Supervising Deputy Attorney
General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

Christopher Lozier,

*Appellant-Defendant,*

v.

State of Indiana,

*Appellee-Plaintiff.*

March 12, 2019

Court of Appeals Case No.
18A-CR-1145

Appeal from the Dearborn Circuit Court

The Honorable James D, Humphrey, Judge

The Honorable Eugene Stewart, Senior Judge

Trial Court Cause No.
15C01-9303-CF-9

**Altice, Judge.**

# Case Summary

In October 1992, Christopher Lozier, then age eighteen, and two male friends were involved in a robbery-turned-murder of a woman as she was making a night deposit at the bank after work. Lozier pled guilty to felony murder and Class B felony conspiracy to commit robbery and was sentenced to an aggregate seventy-year term of imprisonment. After being granted permission to pursue successive post-conviction relief in 2017, Lozier filed a petition for post-conviction relief, which the post-conviction court granted in May 2018, allowing Lozier to file this belated direct appeal of his sentence. He raises two issues that we restate as:

> I. Whether *Blakely v Washington*, 542 U.S. 296 (2004) applies retroactively to Lozier's case and renders his sentence unconstitutional; and

> II. Whether Lozier's sentence is inappropriate in light of the nature of the offense and the character of the offender.

We affirm.

# Facts & Procedural History

In October 1992, Lozier and two friends, Daniel Widener, age seventeen, and Shawn Davis, age eighteen, planned a robbery. They all agreed to rob a night manager of the Ponderosa restaurant, where Davis had worked before recently getting fired. They planned to use Davis's 22-caliber revolver to scare the Ponderosa employee. Over the next few days, the three of them got together at

least twice to finalize their plans. On the night of October 25, 1992, Davis gave the revolver to Lozier, and Lozier and Widener walked from a Wal-Mart parking lot to an adjacent Star Bank.[1] Lozier placed a concrete block in the driveway of the bank so that anyone making a night deposit would have to exit his or her vehicle. Lozier and Widener, while wearing masks, crouched between parked cars and waited outside the bank for Vanessa Wells, Ponderosa's night manager, to arrive and make the restaurant's deposit. According to Lozier, he placed the revolver on the ground between him and Widener.

[4] When Wells arrived at the bank to make the deposit and got out of her car, Lozier and Widener appeared in masks and approached her. Wells screamed and ran back to her car and got inside it. Widener fired a shot at Wells through a cracked passenger-side window. Widener fired a second shot that penetrated Wells's right hand and lodged in her neck, killing her. One or both of them moved her body to the floor of the back seat, where she was shot two more times.[2] Lozier drove the car to an area near a landfill, where they hid the car in some trees and disposed of coats, gloves, at least one mask, and the money bag into pools of water at the landfill. Lozier tossed the handgun into the Ohio River. Widener and Lozier returned to Widener's home and went to sleep.

---

[1] By agreement, Davis did not go to the bank.

[2] At the sentencing hearing, Lozier and Widener each testified that it was the other who shot Wells when she was in the back of the car on the floor.

The proceeds from the robbery were $275.00, part of which Lozier and Widener spent the next day at the mall on a movie and food. Wells's husband reported her missing, and, several days later, hunters discovered Wells's body and her car in the landfill area.

[5] The men continued with their daily lives until they were questioned by police in March 1993. Police had received a report from an inmate and a Crime Stoppers tip that Lozier and Widener were involved in the robbery and murder of Wells.

[6] In September 1993, while represented by appointed attorney Gary Sorge, Lozier pled guilty to felony murder and conspiracy to commit robbery, for which he would receive a sixty-year sentence for the felony murder conviction and a concurrent twenty-year sentence for the conspiracy conviction. In October 1993, attorney Steven Bush entered an appearance for Lozier, and Lozier requested and was granted permission to withdraw the plea. Lozier entered into a new plea agreement on October 19, 1993, again pleading guilty to felony murder and conspiracy to commit robbery, with sentencing left to the court's discretion. Meanwhile Widener pled guilty on October 12, 1993 to felony murder and Class B felony conspiracy to commit robbery, and Davis pled guilty on October 9, 1993 to Class B felony robbery and Class B felony conspiracy to commit robbery. Both Widener's and Davis's plea agreements left sentencing to the trial court's discretion.

[7] After receiving evidence over the course of several days in December 1993, the trial court sentenced Lozier, Davis, and Widener on January 7, 1994, later reduced to a written sentencing order on January 11. The court sentenced Lozier to forty years on the felony murder conviction, enhanced by twenty years, and a consecutive ten-years on the conspiracy conviction, for an aggregate seventy-year sentence. Lozier did not appeal. Davis received twenty years on the Class B felony robbery conviction and twenty years on the Class B felony conspiracy to commit robbery conviction, to be served consecutively.

[8] Widener, like Lozier, received a seventy-year sentence. However, Widener filed a direct appeal, arguing that his sentence was manifestly unreasonable. Our Supreme Court determined that valid aggravators existed but that, although the trial court "did take into account the youthful ages of all three defendants," the trial court "failed to discuss additional mitigating circumstances that we find significant." *Widener v. State*, 659 N.E.2d 529, 534 (Ind. 1995) (J. Dickson, dissenting). The Supreme Court identified the following four mitigators: (1) Widener, age seventeen, lacked a significant history of criminal involvement and "had not been charged or convicted of any criminal acts" prior to the instant charges; (2) Widener pled guilty and saved judicial resources; (3) "even though evidence of remorse was rejected by the trial court," Widener's act of pleading guilty "does show that he was willing to accept responsibility for his actions"; and (4) although Widener "actively engaged in the murder and robbery," "the plan was initiated by Lozier and formulated primarily by Davis[.]" *Id.* A majority of the Supreme Court

determined that the mitigating factors rendered the seventy-year sentence manifestly unreasonable and thus reduced his sentence to fifty years for the felony murder conviction to be served concurrent with his ten-year sentence on the conspiracy conviction.

[9] In 1994 and 1995, Lozier, pro se, filed multiple praecipes for appeal or post-conviction relief, seeking permission to pursue direct appeal or other relief to have his sentence reviewed and revised, but was unsuccessful in those attempts. In 1996, Lozier retained attorney Matt Zerbe, and, pursuant to Ind. Post-Conviction Rule 2(1), Lozier filed on May 8, 1996, a petition for a belated appeal, which, after a hearing, was denied on July 27, 1998. Lozier did not appeal that decision. On March 14, 2006, Lozier filed, pro se, a second P-C.R. 2(1) petition, which was denied on July 25, 2006. Lozier did not appeal that denial.

[10] In 2009, Lozier retained attorney Ed Massey, and on November 3, 2009, Lozier filed a petition for post-conviction relief under P-C.R. 1 alleging sentencing errors, but did not raise issues of ineffective assistance of counsel. Following a hearing in April 2010, the post-conviction court denied his petition on March 8, 2011, and denied his motion to correct error. Lozier did not seek appellate review.

[11] In 2013 or 2014, Lozier retained attorney Sorge. On February 14, 2014, Lozier filed a petition for sentence modification, which, after a hearing, was denied on May 30, 2014. Lozier appealed, and by unpublished decision, this court

affirmed the trial court's denial of Lozier's request for modification, finding that the trial court did not have authority to modify because "Lozier did not have the approval of the prosecuting attorney as required by statute" under the circumstances of Lozier's case. *Lozier v. State*, No. 15A01-1503-CR-105, slip op. at *2 (Ind. Ct. App. Nov. 20, 2015). Although the court affirmed the denial of Lozier's petition for sentence modification, the *Lozier* court determined that Lozier was not foreclosed from filing a request for successive post-conviction relief.

[12] In 2017, Lozier secured representation by attorney Patrick McGrath. On September 14, 2017, Lozier sought permission from the Indiana Court of Appeals to pursue successive post-conviction relief, and to that end, he filed with the Court of Appeals a form for successive post-conviction relief and petition for post-conviction relief. On November 3, 2017, the Court of Appeals issued an order allowing Lozier to file the petition for post-conviction relief on the issue of ineffective assistance of counsel.

[13] On November 13, 2017, Lozier filed in the trial court his petition alleging ineffective assistance of counsel. At the hearing, attorneys Bush, Massey, and Sorge testified. On May 2, 2018, the post-conviction court issued an order granting Lozier's petition for post-conviction relief. Its findings of fact and conclusions of law included:

> 6. In January of 1994, Lozier, represented by Bush and following Bush's advice, entered an open plea to the trial court,

and was subsequently sentenced to an aggregated executed sentence of seventy (70) years.

7. Following sentencing, Bush advised Lozier that he should "wait one year" before pursuing direct appeal and/or modification of his sentence.

* * * *

9. Lozier's co-defendant, Widener, did perfect direct appeal. In 1995, the Indiana Supreme Court revised Widener's sentence to an aggregate executed sentence of fifty (50) years. The Indiana Supreme Court found that Widener was the shooter and Lozier was an accomplice. The Indiana Supreme Court found that the significant mitigating factors including: young age, lack of substantial criminal history, entry of a plea, willingness to accept responsibility, and the formulation of the plan by a third party, Davis, warranted a revised sentence to fifty (50) years. The Indiana Supreme Court did not revise Widener's sentence as a result of inappropriate aggravators.

10. All of the substantial mitigating circumstances cited by the Indiana Supreme Court would have also applied to Lozier. Additionally, Lozier would have had the mitigating factor of not being the principle whom actually fired the weapon causing death. It is very likely that Lozier would have received similar or the same revision of his sentence had his direct appeal been perfected.

* * * *

24. Lozier is still serving his original sentence in the Indiana Department of Correction[] and his anticipated out date is March of 2024.

25.  Lozier's co-defendant, Widener, has completed his sentence[] and been released from incarceration.

* * * *

2.  Bush's conduct fell below an objective standard of reasonableness and deprived Lozier of his Sixth Amendment Protection.  Bush promised to secure a better sentence; counsel ethically and realistically cannot promise results from a trial court, thus, Bush's promise was objectively unreasonable.  Bush advised and represented Lozier through an open plea to murder and robbery without obtaining the court's or prior counsel's file containing all pleadings, orders and discovery; Bush's representation and advice were objectively unreasonable as no duly qualified and careful attorney would advise or enter into an open plea on a murder case without obtaining all necessary information.  Bush advised Lozier to "wait one year" before pursuing direct appeal or other relief; Bush's advice was objectively unreasonable as waiting one year resulted in Lozier's waiver of direct appeal and motion to modify.  Bush promised Lozier he would perfect a direct appeal from any adverse ruling of the trial court; Bush's failure to secure a direct appeal or seek court appointed assistance in doing so was objectively unreasonable.  Each of Bush's failures resulted in Lozier being deprived of Sixth Amendment protection at sentencing and in pursuit of his right to appeal.

3.  There is a reasonable probability that had Bush provided effective representation the result in Lozier's case would have been different.  Lozier's co-defendant had his sentence revised by the Indiana Supreme Court as a result of the Court's consideration of substantial mitigators which were equally applicable to Lozier.  Had Lozier been able to pursue direct appeal he likely would have had his sentence reduced as well.  As a result Widener has been released, Lozier continues to serve his sentence.

4. Zerbe's conduct fell below an objective standard of reasonableness and deprived Lozier of his Sixth Amendment Protection. Zerbe promised to perfect direct appeal of any adverse decision of the court; Zerbe's failure to perfect direct appeal or seek court appointed assistance to do so was objectively unreasonable and deprived Lozier of his Sixth Amendment protection and his right to appeal.

5. There is a reasonable probability that had Zerbe provided effective representation the result in Lozier's case would have been different. Lozier had made several significant efforts to secure belated appeal on a pro se basis prior to retaining Zerbe. Lozier only failed to perfect direct appeal earlier due to the ineffective advice of Bush. The Indiana Courts of review and trial courts do not elevate form over substance and prefer to resolve cases on the merits. Lozier likely would have secured the right to belated appeal on direct [] appeal of the denial of his P[CR]2 request.

6. Massey's conduct fell below an objective standard of reasonableness and deprived Lozier of his Sixth Amendment Protection. Massey pursued PCR relief on the grounds of: 1.) the jury did not determine the aggravator, 2.) Lozier was present but did not commit the murder, 3.) Widener's sentence was revised due to the improper aggravators. Massey's basis for PCR was without any support in law or fact and was an objectively unreasonable PCR Petition. Under Indiana Law, the jury was not required to determine aggravators on an open plea, Lozier's felony murder conviction did not require proof that he personally committed the murder, and the co-defendant's sentence was no[t] revised due to inappropriate aggravators. Massey's petition was further objectively unreasonable in that he failed to address known past ineffective assistance of counsel and he failed to address the substantial mitigating factors which resulted in the revision of the co-defendant's sentence. Massey's conduct further fell below 'the objectively reasonable standard by failing

to perfect direct appeal or seek court appointed assistance in doing so on Lozier's behalf.  Lozier was deprived of his Sixth Amendment protection and right to appeal.

7.  There is a reasonable probability that had Massey provided effective representation the result in Lozier's case would have been different.  Lozier had two prior instances of ineffective assistance of counsel and a significant likelihood of success on that issue.  Had Massey presented those issues and/or perfected appeal from an adverse ruling on those issue[s], Lozier would have likely received relief.

*Appellant's Appendix Vol. 7* at 223-229.  The post-conviction court "granted [Lozier] the right to pursue belated direct appeal of his sentence." *Id*. at 230. Lozier now appeals.

# Discussion & Decision

## *1. Blakely*

[14]  The trial court imposed forty years for felony murder, enhanced by twenty years,[3] and, in support of the enhancement, the trial court found the following aggravators:

a.  The Court finds that the manner in which the crime was committed was peculiarly heinous, cold blooded and callous in that the defendant shot at the victim after she had been

---

[3] At the time, the presumptive sentence for felony murder was forty years, to which no more than twenty years could be added for aggravating circumstances and not more than twenty years subtracted for mitigating circumstances.  Ind. Code § 35-50-2-3.

immobilized by the co-defendant, Widener;[4] That the bizarre disposition of the body by throwing it in the back floorboards of the car, stuffing the legs in the car and firing at it again, taking it to the city dump and leaving it in the car abandoned in a marshy wooded area, is offensive to human decency;

b. The defendant exhibited a surprising lack of remorse or concern exhibited by the calculated and careful disposition of the gun, the bullets, the mask and the bank bag immediately after the body had been abandoned in the Lawrenceburg city dump; and further considering the events of the next day, within a few hours of the killing, which involved a trip to the shopping center, a movie and other recreational and play activities with the proceeds of the robbery display a callous lack of remorse which shocks and offends the human conscience;

c. That defendant and co-defendant, Widener, acted in concert in the robbery and the killing;

d. That the imposition of any reduced or suspended sentence would depreciate the seriousness of this crime;

e. That the defendant has an extensive criminal history of increasing severity;

f. That efforts having been previously made to reform the defendant have failed, and the defendant is in need of

---

[4] We note that, although the court's written sentencing order indicates that Lozier fired the shots at Wells when she was on the floor in the back seat of the car, the trial court at the sentencing hearing told Lozier, "It doesn't matter who fired those other shots into the victim after she was . . . in the back. What you did, you did together. . . . I do not have to decide who did that when it came to the second shots." *Supplemental Record of Proceedings* at 11.

correctional treatment that can best be provided by a lengthy commitment to a penal facility.

*Appellant's Appendix Vol. 3* at 163. The trial court's reasons for ordering the ten-year sentence for the Class B felony conspiracy to commit robbery conviction to be served consecutively included some of the above-listed aggravators, plus the fact that "[a] human being met her death as the result of the conspiracy." *Id.* at 164. In this belated appeal, Lozier asserts that "none of the facts used as aggravators by the trial court were presented for consideration [to] the jury" and that his sentence is unconstitutional under *Blakely*. *Appellant's Brief* at 22. As explained below, however, we find that *Blakely* does not apply here.

[15] On June 24, 2004, the United States Supreme Court decided *Blakely*, which held: "'Other than the fact of a prior conviction, any fact that increases the penalty for a crime beyond the prescribed statutory maximum must be submitted to a jury, and proved beyond a reasonable doubt.'" *Blakely v. Washington*, 542 U.S. 296, 301 (2004) (quoting *Apprendi v. New Jersey*, 530 U.S. 466, 490 (2000)). Under *Blakely* a trial court may not enhance a sentence based on additional facts, unless those facts are either (1) a prior conviction; (2) facts found by a jury beyond a reasonable doubt; (3) facts admitted by the defendant; or (4) facts found by the sentencing judge after the defendant has waived *Apprendi* rights and consented to judicial factfinding. *Gutermuth v. State*, 868 N.E.2d 427, 431 (Ind. 2007).

[16] In response to *Blakely*, our Supreme Court in *Smylie v. State*, 823 N.E.2d 679, 686-87 (Ind. 2005), *cert. denied*, 546 U.S. 976 (2005), held that Indiana's pre-

2005 sentencing scheme violated the Sixth Amendment because it provided for an enhanced sentence based on facts neither found by a jury nor admitted by the defendant.[5]  In addressing the question of *Blakely's* applicability to pre-*Blakely* sentences, the *Smylie* Court recognized the rule from *Griffith v. Kentucky*, 479 U.S. 314, 328 (1987) providing that "a new rule for the conduct of criminal prosecutions is to be applied retroactively to all cases, state or federal, pending on direct review *or not yet final.*"  (Emphasis added).  *Smylie* determined that *Blakely* constituted a "new rule" for purposes of retroactivity and held that *Blakely* would be applied "retroactively to all cases on direct review at the time *Blakely* was announced."  *Smylie*, 823 N.E.2d at 690-91.  Relying on this principle, Lozier maintains that his sentence "is being challenged on 'direct review'" and "revision of his sentence should be mandatory."  *Id*. at 23.  We cannot agree.

[17]    While *Smylie* directed that *Blakely* would be applied retroactively to all cases "on direct review" at the time *Blakely* was announced, *Smylie* did not consider whether an unappealed sentence is "not yet final" based on the potential availability of a belated appeal.  Our Supreme Court expressly did so, however, in *Gutermuth*, where the Court addressed whether *Blakely* applies in belated appeals under P-C.R. 2.  The *Gutermuth* Court clarified that a belated appeal "is treated as though it was filed within the time period for a timely appeal" and "is

[5]  Shortly after *Smylie*, Indiana's General Assembly adopted a new sentencing scheme in April 2005 providing for advisory sentences and allowing a trial court to impose any sentence that is authorized by statute regardless of the presence or absence of aggravating or mitigating circumstances.

subject to the law that would have governed a timely appeal." 868 N.E.2d at 433. That is, "parties to a belated appeal should not receive a different result because the new law has been handed down that would not have been available if a timely appeal had been taken." *Id*. at 434. The *Gutermuth* Court held that "a defendant's case becomes 'final' for purposes of retroactivity when the time for filing a timely direct appeal has expired." *Id*. at 435. Applying that principle, the Court held that "*Blakely* is not retroactive for Post-Conviction Rule 2 belated appeals because such appeals are neither 'pending on direct review' nor 'not yet final' under *Griffith*." *Id*. Accordingly, "belated appeals of sentences entered before *Blakely* . . . are not subject to the holding in that case." *Id*. at 428.

[18]     This is a belated appeal pursuant to P-C.R. 2. Lozier was sentenced in January 1994. His case was final for purposes of retroactivity when the time for filing a direct appeal expired, which was long before *Blakely* was decided in 2004. Because Lozier's case was neither "pending on direct review" nor "not yet final" when *Blakely* was decided, *Blakely* does not apply retroactively to him.

## 2. *Inappropriate Sentence*

[19]     Lozier claims that his seventy-year aggregate sentence is inappropriate. Pursuant to Ind. Appellate Rule 7(B), this Court "may revise a sentence authorized by statute if, after due consideration of the trial court's decision, the Court finds that the sentence is inappropriate in light of the nature of the offense and the character of the offender." Our Supreme Court has explained that the principal role of appellate review should be to attempt to leaven the outliers,

"not to achieve a perceived 'correct' result in each case." *Cardwell v. State*, 895 N.E.2d 1219, 1225 (Ind. 2008). "'[W]e must and should exercise deference to a trial court's sentencing decision, both because Rule 7(B) requires us to give 'due consideration' to that decision and because we understand and recognize the unique perspective a trial court brings to its sentencing decisions.'" *Rogers v. State*, 878 N.E.2d 269, 275 (Ind. Ct. App. 2007) (quoting *Stewart v. State*, 866 N.E.2d 858, 866 (Ind. Ct. App. 2007)), *trans. denied*. "Such deference should prevail unless overcome by compelling evidence portraying in a positive light the nature of the offense (such as accompanied by restraint, regard, and lack of brutality) and the defendant's character (such as substantial virtuous traits or persistent examples of good character)." *Stephenson v. State*, 29 N.E.3d 111, 122 (Ind. 2015).

[20] The determination of whether we regard a sentence as inappropriate "turns on our sense of the culpability of the defendant, the severity of the crime, the damage done to others, and myriad other factors that come to light in a given case." *Bethea v. State*, 983 N.E.2d 1134, 1145 (Ind. 2013). The question under App. R. 7(B) is "not whether another sentence is more appropriate" but rather "whether the sentence imposed is inappropriate." *Miller v. State*, 105 N.E.3d 194, 196 (Ind. Ct. App. 2018). Lozier bears the burden of persuading us that his sentence is inappropriate. *Barker v. State*, 994 N.E.2d 306, 315 (Ind. Ct. App. 2013), *trans. denied*.

[21] As this court has recognized, "[t]he nature of the offense is found in the details and circumstances of the commission of the offense and the defendant's

participation." *Croy v. State*, 953 N.E.2d 660, 664 (Ind. Ct. App. 2011). Lozier argues that he was one of three young men "who entered into an ill-conceived agreement to attempt what they thought would be an easy robbery" and highlights that Davis provided the target and the gun and that Widener discharged the gun and "accelerated the robbery into a murder." *Appellant's Brief* at 14. Lozier acknowledges that he "played his part in the crime," but maintains that his participation "was minimal" in comparison to Widener's, whose "panicked and unnecessary conduct" resulted in Wells's death. *Id.* at 18. Lozier thus suggests that his culpability was less than Widener's, who, after appeal, received a fifty-year aggregate sentence, and that his sentence should be revised to a fifty-year aggregate term. We disagree that the nature of the offense warrants a reduction in his sentence.

[22] Lozier and his co-defendants decided to rob the night manager of Ponderosa to get some cash. While wearing masks, Lozier and Widener crouched in hiding for the victim to arrive. They brought Davis's gun with them. Lozier placed a cement block in the bank driveway so that the driver would need to exit her car. The first shot to Wells injured her and the second killed her. Thereafter, Lozier and/or Widener moved her to the back seat. One or both of them shot her two additional times. Lozier drove the car to a landfill area and hid the car amongst trees. Lozier and Widener continued with their lives until being questioned four or five months later, in March 1993. The nature of the offense displays a callous disregard for human life. Lozier has not shown that a sentence reduction is warranted based on the nature of the offense.

[23]     "The character of the offender is found in what we learn of the offender's life and conduct." *Croy*, 953 N.E.2d at 664. Lozier urges that he had "significant trauma" in his childhood, which included being raised by an alcoholic mother and abusive stepfather. *Appellant's Brief* at 19. At his sentencing hearing, Lozier described being abused by his biological father who "forcibly injected" Lozier with heroin when Lozier was in eighth grade and allowed others to rape Lozier. *Id.* At some point his mother temporarily lost custody of him and his siblings, who temporarily lived in foster care. When they returned to her care, Lozier stated that he became primarily responsible for protecting and providing for his siblings and that he "resorted to stealing to try to keep his family afloat." *Id.*

[24]     As to his character, Lozier also emphasizes that when law enforcement interviewed him in March 1993, he confessed, expressed remorse, and voluntarily participated in multiple interviews. He also provided law enforcement with details, taking police to where he and Widener had disposed of clothing and a mask, and where he had thrown the gun, which allowed law enforcement to recover the gun from the river. He obtained his GED while awaiting sentencing. In arguing for sentence revision, Lozier reminds us that in 1995 our Supreme Court reduced Widener's sentence to fifty years given mitigating circumstances including Widener's youth, plea of guilty, and limited criminal history, and, as a result, Widener was released in April 2016, yet "Lozier remains incarcerated when the man who pulled the trigger walks free." *Id.* at 21. Lozier argues that his character warrants "at least as much consideration as Widener received" and that we should revise his sentence to

fifty-year aggregate term and remand with instructions to release him. *Id*. We do not find, however, that Lozier's character warrants sentence revision.

[25] While Lozier emphasizes that he did not pull the trigger and that it was Widener's panicked and impulsive reaction that turned a blundered robbery into a "serious and heinous crime[,]" we examine more than who pulled the trigger. *Id*. at 17. Lozier chose to actively plan and participate in the robbery. Indeed, in Widener's appeal, our Supreme Court found that "the plan was initiated by Lozier[.]" *Widener*, 659 N.E.2d at 534. After Wells was shot, Lozier moved her body, either on his own or with Widener's help, to the floor of the back seat, and after one of them shot her again, Lozier drove the car and hid it. Lozier took the gun and threw it in the Ohio River. Lozier and Widener also discarded other items including gloves, a mask, and the money bag. The day after the murder, Lozier went to the mall, saw a movie, and spent proceeds. While Lozier emphasizes that he confessed to police and cooperated, that occurred months later when police already were armed with information from two sources that Lozier and Widener were involved in the crimes. Lozier's planning, commission, and hiding of the crime reflect poorly on his character. We do not dispute, nor are we unsympathetic to, Lozier's characterization that he had a "wretched childhood." *Appellant's Brief* at 20. However, "Our supreme court has 'consistently held that evidence of a difficult childhood warrants little, if any, mitigating weight.'" *Patterson v. State*, 909 N.E.2d 1058, 1062 (Ind. Ct. App. 2009) (quoting *Ritchie v. State*, 875 N.E.2d 706, 725 (Ind. 2007)); *see also Carter v. State*, 44 N.E.3d 47, 56 (Ind. Ct. App. 2015)

(recognizing defendant's "horrendous" childhood but rejecting claim that subsequent criminal activity was "inevitable").

[26] "When considering the character of the offender, one relevant fact is the defendant's criminal history," and "[t]he significance of criminal history varies based on the gravity, nature, and number of prior offenses in relation to the current offense." *Sanders v. State*, 71 N.E.3d 839, 844 (Ind. Ct. App. 2017) (quoting *Garcia v. State*, 47 N.E.3d 1249, 1251 (Ind. Ct. App. 2015), *trans. denied*), *trans. denied*. The trial court may consider not only the defendant's adult criminal history but also his juvenile delinquency record in determining whether his criminal history is significant. *Id.*

[27] On appeal, Lozier does not mention having any criminal history. In its written sentencing order, however, the trial court observed that Lozier "has an extensive criminal history of increasing severity."[6] *Appellant's Appendix Vol. 3* at 163. The record reflects that as a juvenile Lozier had an informal adjustment for criminal mischief for causing property damage. When he was eighteen, he was convicted of Class A misdemeanor theft, originally charged as a felony, and placed on probation for a year. While on probation, he was charged with burglary and theft. While out on bond on those charges, and still on probation

---

[6] When discussing Lozier's criminal history, the State indicates that "because Defendant has chosen not to include his pre-sentence investigation report in the record, this Court will not be able to review that criminal history but will simply have to take the trial court's observation in that regard at face value." *Appellee's Brief* at 14. However, Lozier's 1993 pre-sentence investigation report was included in the record at *Appellant's Confidential Appendix Vol. 6*.

for theft, he committed the current offenses. After the death of Wells, he pled guilty to Class D felony theft and was sentenced to three years that would be served concurrent with whatever sentence would be imposed in the felony murder and robbery cause. We find that Lozier had amassed several offenses, increasing in severity, and he committed them while out on bond and probation. This is distinguishable from Widener, who had virtually no criminal history before or after the robbery and murder and had "never been convicted of a criminal act nor formally adjudicated a delinquent."[7] *Prior Record of Proceedings Vol. 2* at 85. We conclude that Lozier has not shown that his character renders the sentence inappropriate.

[28] We reiterate that our task on appeal is not to determine whether another sentence might be more appropriate; rather, the inquiry is whether the imposed sentence is inappropriate. *Barker*, 994 N.E.2d at 315. Lozier has failed to carry his burden of establishing that his sentence is inappropriate in light of the nature of the offense and his character.

[29] Judgment affirmed.

Najam, J. and Pyle, J., concur.

---

[7] According to the record, Widener had one informal adjustment as a juvenile in April 1992 for "minor consuming." *Prior Record of Proceedings Vol. 2* at 85.